[No. A058727. First Dist., Div. Five. Jan. 5, 1994.]

DAVID CROENI et al., Plaintiffs and Appellants, v.
JEFFREY S. GOLDSTEIN, Defendant and Respondent.

## COUNSEL

Nick T. Reckas and Frederick E. Watson for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, David A. Pursley, Gary J. Nevolo and Katherine C. Potter for Defendant and Respondent.

## OPINION

HANING, J.—Plaintiffs/appellants David Croeni et al.,[1] appeal a judgment on the pleadings against them in their fraud action against defendant/respondent Jeffrey S. Goldstein. Appellants contend the court erroneosly ruled they were not entitled to recover lost profits under Civil Code section 3343[2] against respondent, whose fraudulent misrepresentations induced them to sell their business to others. We reverse.

### FACTS AND PROCEDURAL HISTORY

Pursuant to a written agreement executed October 26, 1987, appellants sold their label printing business to Alford Industries, Incorporated (Alford) and its parent corporation, Kane Industries, Incorporated (Kane). Respondent was an officer of Alford and represented it during the sale negotiations. As part of the sales price Alford agreed to pay appellants a specified amount for "machinery and equipment," plus additional sums if the cumulative net sales to the "clientele accounts" exceeded a specified amount between November 1, 1987, and October 31, 1989. It also agreed to pay appellants a specified percentage of the net sales price "of all orders invoiced and collected from the 'clientele accounts'" during the five-year period commencing November 1, 1987, in exchange for appellants' covenants not to compete with Alford "for the placement of orders desireable [*sic*] to Alford from [the] 'clientele accounts' . . . ." "Clientele accounts" were defined as the business entities for which appellants had printed labels during the two

---

[1]Additional appellants include Anett Croeni, Thomas L. Hall and Billie Ann Hall.
[2]Unless otherwise indicated, all further statutory references are to the Civil Code.

years previous to October 26, 1987. The agreement states that ". . . Alford believes it will be capable of servicing the 'clientele accounts' . . . in excellent fashion[.]"

Two years later appellants brought the action from which this appeal derives. One cause of action was against Alford and Kane for breach of contract, alleging generally that as a result of Alford's mishandling of the clientele accounts, sales had been reduced by 87 percent, with a concurrent reduction in the payments due appellants under the sales agreement.

The other cause of action was against Alford, Kane and respondent for promissory fraud in the sale of the business. It alleged generally that appellants agreed to sell the business and enter the covenant not to compete because they relied on the promises made by respondent, Alford and Kane that they were capable of "servicing the 'clientele accounts' . . . in excellent fashion[,]" that they would preserve and promote the good will of the business, and that they would keep appellants apprised of orders generated from the clientele accounts. It further alleged that respondent, Alford and Kane never intended to comply with their promises. As a result of these intentional misrepresentations, appellants alleged they "sustained damages of the difference between the actual value of their business and the amounts received by them under the terms of the sale agreements together with lost profits and other benefits which would have accrued to [them] had their business not been sold and transferred to [respondent,]" and sought damages in accordance with section 3343.[3]

The trial court summarily adjudicated that appellants were not entitled to recover damages in their fraud action for the profits or other benefits they would have earned had they not sold their business.

During trial the court granted respondent's motion for judgment on the pleadings on appellants' fraud action on the grounds that, given the summary adjudication and appellants' own admissions that they were not seeking basic out-of-pocket damages in their fraud action, there were no cognizable

---

[3]Section 3343 provides, in pertinent part: "(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following: [¶] . . . [¶] (3) Where the defrauded party has been induced by reason of the fraud to sell or otherwise part with the property in question, an amount which will compensate him for profits or other gains which might reasonably have been earned by use of the property had he retained it."

compensatory damages for fraud which appellants were entitled to recover.[4] It then ordered the entire action against respondent dismissed with prejudice.

## DISCUSSION

■ The primary issue in this appeal is whether the trial court correctly granted judgment on the pleadings. ■ Review of a judgment on the pleadings is governed by the same standard applicable to review of a judgment of dismissal based on an order sustaining a general demurrer. The appellate court examines the face of the pleadings, together with matters subject to judicial notice, to determine whether the facts are sufficient to constitute a cause of action. (*O'Neil* v. *General Security Corp.* (1992) 4 Cal.App.4th 587, 594, fn. 1 [5 Cal.Rptr.2d 712].) The plaintiff's allegations are accepted as true. (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 676 [138 Cal.Rptr. 338].)

■ The trial court based its ruling on the fact of appellants' concession in response to an interrogatory that they were not seeking "the difference between the actual value of [their] business and the amounts [they] received . . . under the terms of the sale agreements, as alleged [in their complaint]." This does not preclude them from pursuing their fraud action against respondent; it simply states that they are not seeking damages under the particular standard framed by the interrogatory. It does not prevent them from seeking damages against respondent under some other standard or measure.

Since respondent was not a party to the sales contract between appellants and Alford, he could not be sued for its breach or for rescission. However, as the person who allegedly made the false representations on behalf of Alford to induce appellants to sell their business, he could be liable in tort for fraud or deceit. To plead a cause of action for fraud the plaintiff must allege (1) a knowingly false representation by the defendant, (2) an intent to defraud or to induce reliance, (3) justifiable reliance, and (4) resulting damages. (Civ. Code, § 1709; see 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778.) Appellants' complaint contains all the requisite elements of a cause of action for fraud, and respondent does not contend otherwise.

Respondent obtained judgment on the pleadings based on appellants' stated position that the only damages they were seeking from him consisted of lost profits, which the parties regarded as profits appellants would have earned from the business had they not sold it. Appellants concede they are

---

[4]On appeal appellants are only arguing that the ruling regarding their ability to seek lost profits was wrong. They are not contesting the ruling that they are precluded by their admissions from seeking out-of-pocket damages from respondent.

not seeking basic out-of-pocket damages against respondent, but contend that as sellers they are entitled to enforce the contract, recover the sales price, and also recover lost profits they would have received had they not sold the business. For this contention they rely on section 3343, which provides, in relevant part: "(a) One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction, including any of the following: [¶] . . . [¶] (3) Where the defrauded party has been induced by reason of the fraud to sell or otherwise part with the property in question, an amount which will compensate him for profits or other gains which might reasonably have been earned by use of the property had he retained it."

■ In the absence of a fiduciary relationship, section 3343 governs the measure of damages in fraudulent property transactions. (*Stout* v. *Turney* (1978) 22 Cal.3d 718, 725-726 [150 Cal.Rptr. 637, 586 P.2d 1228].) Subdivision (a)(3) of section 3343 was added by amendment in 1971. It retained and amended the preexisting "out-of-pocket" rule, but clearly rejected the "benefit-of-the-bargain" measure by providing in subdivision (b): "Nothing in this section shall . . . : [¶] (1) Permit the defrauded person to recover any amount measured by the difference between the value of property as represented and the actual value thereof." (*Stout* v. *Turney*, *supra*, at pp. 724-727.) Prior to the 1971 amendment, a defrauded party could not receive anticipated profits in an action for damages. (See, e.g., *Burkhouse* v. *Phillips* (1971) 18 Cal.App.3d 661, 665 [96 Cal.Rptr. 197].) The 1971 amendment permitted lost profits as an element of damages in appropriate cases to correct "certain logical inconsistencies [that] existed between the judicial application of [former section 3343] and that of other enactments dealing with the measure of damages for fraud." (*Stout* v. *Turney*, *supra*, at p. 726.) For example, in fraud cases *not* involving the purchase, sale or exchange of property, lost profits were available under the general tort recovery statute, section 3333, or under section 3300 in breach of contract cases, and full "benefit-of-the-bargain" damages were recoverable under California Uniform Commercial Code section 2721. (*Stout* v. *Turney*, *supra*, at p. 726.)

However, the 1971 amendment did not repeal, amend or affect the doctrine of election of remedies, nor did it provide for a double recovery by defrauded parties. (See, e.g., *Channell* v. *Anthony* (1976) 58 Cal.App.3d 290, 314 [129 Cal.Rptr. 704].) ■ Thus, since appellants sought to enforce the sale and obtain the sale price to which they agreed, they cannot recover from Alford and Kane profits they would have earned had they kept the business, since this would amount to a double recovery. In other words, the

amount of profit earned by the business is one of the factors taken into account in establishing its value, and reflected in the sale price. If appellants were seeking rescission against Alford and Kane, lost profits would be recoverable from them. (*Channell* v. *Anthony*, *supra*, 58 Cal.App.3d at p. 315.)

As part of their agreement to sell their business appellants also agreed not to compete, in exchange for a percentage of net profits from sales to existing customers for a specified period of time. To the extent this payment does not necessarily reflect the value of the business per se, it might reflect a compensable loss under section 3343, since it represents income or profits appellants might have earned had they not been fraudulently induced to refrain from engaging in that type of business. However, in the record before us, appellants did not· argue this to the trial court or tender evidence in support thereof, but confined their damage argument to profits they would have earned from the business had they not sold it.[5] Likewise, appellants were entitled to pursue a judgment against respondent for the damages they recovered from Alford and Kane, but they specifically declined to do so.

Nevertheless, section 3343 also states in subdivision (b): "Nothing in this section shall . . . : [¶] . . . [¶] (2) Deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled." As we previously stated, since respondent was not a party to the agreement he could not be sued for its breach or for rescission, but remains liable under any other "legal or equitable remedies to which [appellants] may be entitled." Consistent with section 3343, appellants are entitled to proceed against respondent for lost profits as though they were rescinding, in which case respondent is entitled to credit for any amount appellants collect against Alford and Kane, as appellants concede.

The judgment is reversed.

Peterson, P. J., and King, J., concurred.

A petition for a rehearing was denied January 28, 1994, and respondent's petition for review by the Supreme Court was denied April 20, 1994.

---

[5]Appellants initially sought declaratory relief from the noncompetition clause, but dismissed that cause of action at some point prior to judgment.