[No. H013857. Sixth Dist. May 6, 1996.]

SERVICE BY MEDALLION, INC., Plaintiff and Appellant, v.
CLOROX COMPANY, Defendant and Respondent.

1810

## COUNSEL

Thierman Law Firm, Mark R. Thierman and Robert Fried for Plaintiff and Appellant.

Fitzgerald, Abbott & Beardsley, Beth E. Aspedon, Philip E. Drysdale and Michael S. Ward for Defendant and Respondent.

## OPINION

ELIA, J.—Service By Medallion, Inc. (Medallion) appeals from a judgment dismissing its complaint without leave to amend, following an order sustaining the demurrer of defendant Clorox Company. Medallion contends (1) the trial court erred in ruling that the action was preempted by the National Labor Relations Act (NLRA), 29 United States Code sections 157 and 158, and (2) the third amended complaint adequately stated a cause of action for fraudulent inducement of a contractual relationship. We agree with Medallion's first contention, but hold nonetheless that the complaint was fatally defective. Accordingly, we will affirm the judgment of dismissal.

*Scope of Review*

A general demurrer presents the same question to the appellate court as to the trial court—namely, whether the plaintiff has alleged sufficient

facts in the complaint to justify relief on any legal theory. (*B & P Development Corp.* v. *City of Saratoga* (1986) 185 Cal.App.3d 949, 953 [230 Cal.Rptr. 192].) The reviewing court "gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) In addition, whether an action is preempted by federal law is a question the appellate court reviews de novo. (*Hillhaven Oakland Nursing etc. Center* v. *Health Care Workers Union* (1996) 41 Cal.App.4th 846, 853 [49 Cal.Rptr.2d 11].)

In light of these principles, we recite the material allegations of the third amended complaint, treating them as true for the purpose of determining whether they are sufficient to withstand demurrer. Medallion alleged that prior to April 1992 Clorox had used the janitorial services of a company that was bound by a collective bargaining agreement with the Service Employees International Union. In April 1992, Clorox made certain representations to Medallion, summarized in paragraph 6 of the complaint: "CLOROX represented to [Medallion] that it wanted to terminate its union contractor and replace them [*sic*] with a non-union contractor with the goal of having all future janitorial services at the Clorox Pleasanton facility performed by non-union personnel. CLOROX represented that the union would not be permitted at any time to dictate or influence which company CLOROX chose to perform janitorial services at its Pleasanton facility and whether it was union or non-union. CLOROX further represented that CLOROX was committed to all steps necessary to ensure that janitorial services could be performed and provided on an ongoing basis by a non-union contractor at the Pleasanton facility without regard to union pressure. CLOROX specifically represented that this commitment included setting up and support of a 'dual gate' system and any other measures authorized and available to employers under the National Labor Relations Act and in the state and federal courts, to permit work by a non-union contractor under picketing and leafleting conditions, or other tactics of a union campaign. CLOROX specifically represented that the foregoing representations were a condition of contract negotiations with the non-union contractors, including [Medallion], bidding to perform cleaning services at the Clorox Pleasanton facility."

The complaint further alleged that Clorox made these representations to induce Medallion to submit a bid and enter into a contract. Medallion relied on Clorox's representations by submitting a bid and thereafter entering into a two-year contract. Clorox, however, knew its statements were false or had no reasonable ground to believe they were true, and it did not intend to perform its promises.

The third amended complaint asserted a single cause of action, for fraudulent inducement to enter into a contract. Clorox had successfully demurred to three earlier versions of the complaint, which had attempted to state claims based on the parties' contract in addition to tort claims for fraud. On these previous occasions the trial court had granted leave to amend.

In response to the third amended complaint, Clorox again demurred, contending (1) the action was preempted by the NLRA, 29 United States Code sections 157 and 158, and (2) the complaint failed to state facts sufficient to constitute a cause of action for fraudulent inducement to enter into a contract. (Code Civ. Proc., § 430.10, subd. (e).) The trial court sustained the demurrer without leave to amend on the ground that "[the] NLRA preempts this matter." This appeal followed.

*Discussion*

1. *NLRA Preemption*

■ Medallion first challenges the trial court's determination that its action against Clorox was preempted by the NLRA, 29 United States Code sections 157 and 158. Medallion contends that the issue before the court, whether Medallion was fraudulently induced to enter into the contract with Clorox, was not preempted because it could be independently resolved without interfering with the administration of national labor policy. We agree.

■ In addressing a claim of preemption the court must determine whether the conduct at issue was arguably protected or arguably prohibited by section 7 or section 8 of the NLRA. (*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 245 [3 L.Ed.2d 775, 783, 79 S.Ct. 773].) If so, then the state court ordinarily has no power to adjudicate it and must defer to the exclusive jurisdiction of the National Labor Relations Board (NLRB). On the other hand, when the challenged activity is a "merely peripheral concern" of the NLRA, it will not be inferred that Congress intended to deprive states of the power to act. (*Id.* at p. 243 [3 L.Ed.2d at p. 782].) Likewise, states may regulate conduct that "touches on interests so deeply rooted in local feeling

and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act." (*Operating Engineers* v. *Jones* (1983) 460 U.S. 669, 676 [75 L.Ed.2d 368, 376, 103 S.Ct. 1453]; *San Diego Unions* v. *Garmon, supra,* 359 U.S. at p. 244 [3 L.Ed.2d at pp. 782-783].)

 The United States Supreme Court has refused to apply the doctrine of *Garmon* preemption in a mechanical, inflexible fashion, particularly where the state has a "substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." (*Farmer* v. *Carpenters* (1977) 430 U.S. 290, 302 [51 L.Ed.2d 338, 351, 97 S.Ct. 1056]; *Sears, Roebuck & Co.* v. *Carpenters* (1978) 436 U.S. 180, 188 [56 L.Ed.2d 209, 219-220, 98 S.Ct. 1745].) "The precondition for pre-emption, that the conduct be 'arguably' protected or prohibited, is not without substance. It is not satisfied by a conclusory assertion of pre-emption . . . . If the word 'arguably' is to mean anything, it must mean that the party claiming pre-emption is required to demonstrate that his case is one that the [National Labor Relations] Board could legally decide in his favor." (*Longshoremen* v. *Davis* (1986) 476 U.S. 380, 394-395 [90 L.Ed.2d 389, 403, 106 S.Ct. 1904].) In considering the "arguably prohibited" facet of the preemption doctrine, the focus of the inquiry is "not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is *identical to . . .* or *different from . . .* that which could have been but was not, presented to the Labor Board. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the Board which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." (*Sears, Roebuck & Co.* v. *Carpenters, supra,* 436 U.S. at p. 197 [56 L.Ed.2d at pp. 225-226], italics added.)

In *Sears*, the United States Supreme Court considered whether a union's peaceful picketing on the private property of an employer was subject to NLRA preemption under *Garmon*. The court assumed that the picketing was both arguably prohibited and arguably protected under the NLRA. Nevertheless, it found that the controversy the employer might have presented to the NLRB was not the same as the controversy presented to the state court. The issue presented by the employer was simply whether trespass had occurred, not whether the objectives of the picketing violated federal law. Sears's challenge was addressed solely to the location of the picketing, which was "completely unrelated" to questions the NLRB would have been called upon to determine. (436 U.S. at p. 198 [56 L.Ed.2d at pp. 226-227].) "Accordingly, permitting the state court to adjudicate Sears' trespass claim would create

no realistic risk of interference with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices." (*Ibid.*; cf. *Operating Engineers* v. *Jones, supra,* 460 U.S. at p. 683 [75 L.Ed.2d at p. 380] [discharged supervisor's state action against union for interference in contract with employer preempted, since union's interference would have been presented to NLRB]; see also *Hillhaven Oakland Nursing etc. Center* v. *Health Care Workers Union, supra,* 41 Cal.App.4th at pp. 859-862 [preemption of state controversy where resolution required interpretation of collective bargaining agreement, NLRB had exercised jurisdiction and issued a complaint, and state court's order created possibility of conflict with NLRB rulings].)

 ■■■ In this case, Clorox maintains that Medallion's fraud cause of action "relates directly to Clorox's alleged interference with the § 157 rights of Appellant's employees. Any interference by an employer with rights of an employee under § 157 is expressly prohibited under the NLRA." This statement amounts to no more than an assertion that where a dispute arises from a third party's activity which is within the purview of the NLRA, the dispute itself is necessarily governed by the NLRA. We cannot agree. The same reasoning was rejected by the United States Supreme Court in *Belknap, Inc.* v. *Hale* (1983) 463 U.S. 491 [77 L.Ed.2d 798, 103 S.Ct. 3172]. There replacement workers for striking employees sued the employer for misrepresentation and breach of contract because the employer had promised them that their replacement positions were permanent. Belknap urged the court to find preemption of the suit "because it related to the offers and contracts for permanent employment, conduct that was part and parcel of an arguable unfair labor practice." (463 U.S. at p. 510 [77 L.Ed.2d at p. 814].) The court looked beyond the nature of the strike and the right of the employer to extend a permanent offer to replacement workers. Although these were matters for the NLRB, the focus of its determination would be on the rights of the strikers, not on Belknap's conduct toward replacements. The labor dispute did not have "anything in common with the question whether Belknap made misrepresentations to replacements that were actionable under state law." (*Ibid.*) Consequently, maintaining the misrepresentation action was of no more than "peripheral concern" to the NLRB and federal law. Moreover, the state had "a substantial interest in protecting its citizens from misrepresentations that have caused them grievous harm." (*Id.* at p. 511 [77 L.Ed.2d at pp. 814-815].) The NLRB could not have provided relief to the plaintiffs, since their injury was not relevant to the board's function. Similarly, the breach of contract issue could be resolved without interfering with the NLRB's jurisdiction, even if it ordered reinstatement of the striking workers, since the interests protected by the NLRA and state law were

" 'discrete' " concerns. (*Id.* at p. 512 [77 L.Ed.2d at pp. 815-816].) Consequently, the state action was allowed to proceed.

Clorox offers no meaningful distinction between *Belknap* and the procedural circumstances before us. This is not, as Clorox suggests, a controversy involving Clorox's alleged interference with the self-organization rights of its employees under the NLRA (29 U.S.C. § 157). The ongoing union campaign and resulting negotiations were only the backdrop against which the alleged misrepresentations occurred. The NLRB would not be concerned with Clorox's false promise to Medallion, nor would it be able to provide Medallion any relief. Any adjudication by the NLRB in issues arising from these activities would be independent of Medallion's grievance against Clorox for misrepresenting its intention to hire and retain a nonunion janitorial service. We therefore conclude, contrary to Clorox's demurrer and the trial court's ruling, that this action was not preempted by federal law.

## 2. Sufficiency of the Complaint

■ "An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." (*Lazar* v. *Superior Court* (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981].) The action is one of deceit, which requires proof that the defendant made a misrepresentation of fact or a promise without any intention of performing it. (Civ. Code, § 1710.) A complaint for fraud must allege the following elements: (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages. (*Croeni* v. *Goldstein* (1994) 21 Cal.App.4th 754, 758 [26 Cal.Rptr.2d 412].) Every element must be specifically pleaded. (*Tarmann* v. *State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157 [2 Cal.Rptr.2d 861].)

. ■ Here, the third amended complaint alleged the following misrepresentations by Clorox: (1) Clorox wished to terminate its current union contractor with the intention of having its future janitorial services provided by nonunion personnel; (2) Clorox would not permit the union "to dictate or influence" it in deciding which janitorial service to select or whether it was union or nonunion; and (3) Clorox would take steps to ensure that a nonunion service could perform notwithstanding picketing or other pressure tactics by the union. Specifically, Clorox promised to implement a "dual gate" system and any other measures permitted by the NLRA.

The first allegation does not constitute an actionable misrepresentation because it states no fact conveying the falsity of Clorox's representation of

its purpose. The complaint fails to allege that Clorox did *not* in fact intend to terminate its current service provider, or that Clorox intended in fact to retain union personnel. The only alleged fact related to Clorox's goal of using a nonunion contractor is that Clorox actually carried out its stated intention by hiring Medallion.[1]

The second allegation is similarly defective. The complaint does not specifically allege that Clorox in fact intended the union to influence it or even that the union did influence its choice of service providers. The only fact relevant to Clorox's stated intention not to be influenced by the union negates any claim of misrepresentation: Clorox selected Medallion, a *non-union* company.

The third alleged misrepresentation pertains to the steps Clorox promised to take to ensure continuous performance by a nonunion contractor. According-ing to the complaint, this promise was false in that Clorox did not take any of these actions when the union began its campaign at the Pleasanton facility. As a result, Medallion suffered the following injuries: (1) it made a "substantial investment in materials and preparation" to enable it to perform under the contract; (2) it retained legal counsel to resist the union campaign; and (3) other customers canceled contracts with Medallion.

Relying on *Bernstein* v. *Financial Indem. Co.* (1968) 263 Cal.App.2d 324 [69 Cal.Rptr. 543], Clorox devotes considerable energy to the argument that Medallion has no remedy for the alleged misrepresentation because the parties had the express right to terminate the contract. In *Bernstein*, an insurance agent claimed fraudulent inducement to enter into a contract after the defendant terminated their agency agreement. The court properly ex-cluded parol evidence bearing on the assertion that the termination was wrongful, because the integrated agreement permitted termination by either party.

Contrary to Clorox's position, the procedural circumstances before us are not identical to those of *Bernstein*. Medallion is not claiming that Clorox promised not to terminate the contract; the allegations pertained to Clorox's

---

[1]Clorox incorrectly argues that "the expression of a 'goal' of having non-union personnel in the future is not actionable because it is a mere expression of opinion." On the contrary, representations of one's goals or intentions are statements of fact, not opinion, as they assert the fact of a present state of mind. (*Las Palmas Associates* v. *Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1238 [1 Cal.Rptr.2d 301]; see also Prosser & Keeton, Torts (5th ed. 1984) § 109, pp. 755-765.)

promise to take steps to maintain the nonunion status of the janitorial personnel, which was not even a subject of the parties' service agreement. Thus, we need not discuss Clorox's misplaced argument that the alleged misrepresentation is "squarely against the terms of the contract." (*Bernstein* v. *Financial Indem. Co.*, *supra*, 263 Cal.App.2d at p. 329.)

The defect in Medallion's pleading instead relates to the elements of causation and damage. ■ In order to recover for fraud, as in any other tort, the plaintiff must plead and prove the "detriment proximately caused" by the defendant's tortious conduct. (Civ. Code, § 3333.) Deception without resulting loss is not actionable fraud. (*Hill* v. *Wrather* (1958) 158 Cal.App.2d 818, 825 [323 P.2d 567].) "Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown." (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 680, p. 131.) Viewed in terms of materiality, "[a] false representation which cannot possibly affect the intrinsic merits of a business transaction must necessarily be immaterial because reliance upon it could not produce injury in a legal sense." (*Hill* v. *Wrather*, *supra*, 158 Cal.App.2d at p. 824.)

■ Medallion generally pleaded that it invested in materials in reliance on Clorox's "representations and promises" made before entering into a contractual relationship. It is tempting to view Clorox's promise to safeguard the nonunion status of its personnel as a proximate cause of Medallion's expenditures in preparation to perform the contract. If the contract had not been performed, we might agree that these expenditures constituted damages proximately caused by the misrepresentations. In *Lazar* v. *Superior Court*, *supra*, 12 Cal.4th 631, for example, the employer's misrepresentations were an integral part of the parties' contractual relationship; the plaintiff required assurances of job security and a profitable future as a condition of accepting the position, because it required uprooting his family and giving up a stable income. Had the employer performed its contractual obligations, these expenses would not have constituted fraud damages because no misrepresentation would have occurred.

Here, however, the parties apparently performed their contractual promises: for several months Medallion engaged in cleaning services and Clorox made payments as the service agreement provided. The expenses Medallion incurred in preparing to perform its contractual duty, though allegedly responsive to Clorox's promise, were essential to its subsequent performance of the service agreement and therefore could not have been considered

detrimental. It was only when Clorox terminated the parties' contractual relationship that Medallion could have perceived its reliance expenses as "losses." Thus, it was the termination, not the misrepresentation, that resulted in the alleged harm. We must conclude, therefore, that even if Clorox falsely promised to take steps to ensure continued performance during a union campaign, Medallion's reliance on that promise by entering into the contract and preparing to perform did not constitute "detriment proximately caused" by Clorox's conduct, as the tort of deceit requires.[2] (Civ. Code, § 3333.)

Medallion also claimed that its damages included the cost of retaining legal counsel to resist the union campaign. These expenses, however, cannot be considered reliance damages: they were incurred not in reliance on Clorox's promise to take legal measures to resist the union campaign, but in response to Clorox's *failure to perform* that promise. Had the promise been a term of the parties' contract, it would have been enforceable; but Clorox had no contractual duty to adopt these measures. Indeed, Clorox's nonperformance demonstrated the *falsity* of its promise, thereby making continued reliance on the promise unjustified.

The allegation that other customers canceled contracts with Medallion likewise cannot be the product of Medallion's reliance on Clorox's misrepresentation; at best one can infer that the *customers* relied on Medallion's unavailability due to its commitment to Clorox. Perhaps Medallion meant to say that *Medallion* canceled its contracts with other customers; but the complaint does not so state. Furthermore, the complaint asserts that the cancellation of contracts resulted not from Clorox's misstatements, but from its "failure to honor its representations." This is an assertion of breach of contract damages, not reliance damages.

We thus conclude that the third amended complaint failed to state a cause of action for fraudulent inducement to contract. We further perceive no reasonable possibility that the defects in the complaint can be cured by amendment—nor does Medallion suggest any such possibility. As noted earlier, if a demurrer may properly be sustained on any of the grounds

[2]Compare with *Hill* v. *Wrather, supra,* 158 Cal.App.2d 818. In *Hill,* the cross-defendants' concealment of their personal relationship was not material, even though it allegedly induced the appellants to enter into a transaction to buy stock from Hill, because the misrepresentation had no bearing on the value of the property or services they bargained for and received. Similarly, here any misrepresentation by Clorox had no effect on the value of the bargain Medallion received.

asserted by the defendant, the judgment must be upheld, even if the basis of the trial court's ruling is erroneous.

The judgment is affirmed.

Premo, Acting P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied June 3, 1996, and appellant's petition for review by the Supreme Court was denied July 17, 1996.