Filed 6/26/14  Weed v. Effective Mortgage CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANTOINETTE WEED,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>EFFECTIVE MORTGAGE COMPANY et al.,<br><br>        Defendants and Respondents. | B249972<br><br>(Los Angeles County<br>Super. Ct. No. PC051354)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on May 29, 2014, be modified as follows:

1.  The second full paragraph commencing on page 16 with "Weed's allegations" and ending at the top of page 17 with "in a conspiracy" is modified by deleting from the fourth sentence the words "Weed or" and deleting the last sentence beginning with the word "Similarly," as follows:

> Weed's allegations are sufficient to allow her to obtain the remedies of restitution or disgorgement if she prevails on her conspiracy cause of action.  The second amended complaint and reasonable inferences drawn therefrom states facts that indicate that Royal and its alter ego, Jahangard, benefited from the wrongful

act of pressuring Weed to get "money out of Weed," to designate $66,000 as a gift, to sign the "cousin" letters, and to provide her personal and financial information for their use. The benefit they received was their brokerage commission. If they had previously assisted Coviare in similar schemes, there may be additional brokerage commissions by which they obtained a benefit unjustly at the expense of others, so that it is unjust for Royal and its alter ego to retain the benefit. Weed may be entitled to restitution or disgorgement even though it was not her own money that went into Royal's pocket as a brokerage commission.

2. On page 17, add to the Discussion as part **I.** the following subheading and two paragraphs, which will require redesignation of the subsequent subheadings as parts **J.** and **K.**, respectively:

**I. The trial court erred in holding that the Broker defendants' unclean hands defense barred Weed's claims for conspiracy to commit fraud and unjust enrichment/restitution**

In reversing, we necessarily reverse the trial court's determination that the doctrine of unclean hands must inevitably and completely bar Weed's remaining claims against the Broker defendants for conspiracy and unjust enrichment. This is what the court held in sustaining the Broker defendants' demurrer. There is evidence to be weighed. It cannot be weighed on demurrer or appeal. Nor can we say as a matter of law or equity that a person who conspires to commit fraud on a victim must prevail on its unclean hands defense against the victim because the victim lied to a third party.

Also, as we have observed above, a party which does not establish causation of damages may still obtain restitutionary relief. (E.g., *County of San Bernardino v. Walsh*, *supra*, 158 Cal.App.4th at pp. 542–543.)

2

There is no change in the judgment.

Respondents Royal Rep Realty and Houman Jahangard's petition for rehearing is denied.

ROTHSCHILD, Acting P. J.          JOHNSON, J.          MILLER, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

3

Filed 5/29/14 (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ANTOINETTE WEED, | B249972 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC051354) |
| v. | |
| EFFECTIVE MORTGAGE COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from judgments and orders of the Superior Court of Los Angeles County, Melvin S. Sandvig, Judge. Affirmed in part and reversed in part.

California Lawyers Group, Inc., Mitra Chegini and David J. Castenholz for Plaintiff and Appellant.

Roger A. S. Manlin for Defendants and Respondents Effective Mortgage Company and Bijan Vaziri.

Schaffer, Lax, McNaughton and Chen for Defendants and Respondents Royal Rep Realty and Houman Jahangard.

_____

Plaintiff Antoinette Weed loaned money to a male friend, Jastereo Coviare, to help him appear to qualify for a home mortgage. Weed represented to the lender that she was Coviare's cousin and that $66,000 of the money she loaned Coviare was a gift. When Coviare was unable to repay Weed, she sued Coviare's real estate broker and mortgage lender to recover the money loaned, basing her tort claims against them on representations they allegedly had made to induce her to make the false representations and to lend Coviare money. The broker and lender defendants demurred to Weed's second amended complaint, and the trial court sustained the demurrers without leave to amend on a number of grounds, including lack of causation of damages. We reverse the judgment because Weed stated causes of action on her fourth cause of action for conspiracy and her tenth cause of action for unjust enrichment. We affirm the remainder of the trial court's orders sustaining demurrers without leave to amend to the remaining causes of action.

## BACKGROUND

This appeal arises from the trial court's orders sustaining demurrers to Weed's second amended complaint without leave to amend. The parties to the action include Weed and Coviare. Defendant Sherwood Escrow is not a party to this appeal. Nor is Coviare, who appears to have defaulted.

The remaining parties are the defendants whose demurrers were sustained and who are the respondents in this appeal. They consist of a real estate broker, Royal Rep Realty (Royal), and its alleged alter ego, Houman Jahangard, and a mortgage lender, Effective Mortgage Company (Effective), and its alleged alter ego, Bijan Vaziri. From the allegations of the complaint and the parties' briefs, we infer Royal represented Coviare in purchasing his home and Effective made the home loan. Defendants are sometimes referred to as the Broker defendants and the Lender defendants.

We accept the truth of the following allegations set forth in Weed's second amended complaint. Weed met Coviare on an Internet dating site in July 2010 and started lending him money. They entered into a relationship. By November 2010 she

2

had loaned him $54,000. In that month, he told her he intended to buy a house. He asked her to lend him an additional $20,000, "which he informed her was for the purpose of showing that he had enough money in his bank account to qualify for a home loan." She loaned him the money.

On January 10, 2011, she loaned him another $66,000, "again for the purpose of showing that COVIARE had sufficient funds to obtain the home loan." At Coviare's request, Weed wrote on the check that the money was a "gift" when it actually was a loan.

On the same day, an employee of Coviare's real estate broker, Royal, told Weed "the reason behind identifying the sixty six ($66,000.00) thousand dollar loan as a gift rather than a loan was that borrowed monies could not be used as a down payment" on the purchase of the home. Weed experienced "apprehension" but was told by the Royal employee on January 10 "that this was a mere formality and unimportant that the gift denomination was inaccurate." Royal and Jahangard also told her that "it was the normal custom and practice of the real estate lending industry to have a secondary source [of money] sign off on a source of funds as a gift rather than borrowed funds in order to get the transaction approved."

Also on January 10, 2011, Vaziri, on behalf of mortgage lender Effective, told Weed that the $66,000 "could not be accepted as borrowed funds unless it was turned into a gift which at that point would be acceptable as part of the completion of the COVIARE loan transaction."

Weed also signed two letters falsely stating Coviare was her cousin, having been told by defendant Jahangard and the Royal employee "[t]hat it was the normal custom and practice of the real estate lending industry to sign documents," stating "that a borrower and a second source of income were related when they were not." They told her "that this was part of the normal process of obtaining a home loan."

In addition, Vaziri, on behalf of Effective, asked Weed "for a great deal of personal financial information," "inclusive of a letter from WEED'S bank . . . and a copy

3

of WEED'S IRA account" in order to complete "the loan transaction on COVIARE'S home loan, and to know where the funds were coming from." She also alleges Vaziri told her the information "would be viewed by VAZIRI and EFFECTIVE only for the processing of the loan transaction."

Thereafter, Weed loaned additional money to Coviare. According to the second amended complaint, the total amount loaned was $267,192.78. However, at argument Weed's counsel conceded that the total loaned consisted of $74,000 loaned before the $66,000, plus a much smaller sum loaned after the $66,000, resulting in a total loan amount of approximately $150,000. Coviare has admitted in writing to having borrowed $142,000 from Weed, which he claims he is unable to repay.

All of the representations made by defendants were false. It was unnecessary for the $66,000 to be a gift. "[H]aving Plaintiff sign off as COVIARE'S cousin was not only not standard in the real estate lending industry but was wrong with the potential of exposing Plaintiff to civil liability." It also was unnecessary for her to supply her personal and financial information. "Vaziri knew that her personal and financial information was not required for the completion of the loan transaction as long as COVIARE was able to show the funds were in his account." "He had no intention of keeping the information confidential but intended to, and did share it with others, namely Jahangard." Vaziri misrepresented the need for this information so he could "obtain, use and disclose" it. Indeed, Jahangard telephoned Weed after having seen her personal and financial information, soliciting her to invest in Royal, whereupon she responded that she was not interested.

Weed relied on the representations of Vaziri and Effective in writing "gift" on her check and disclosing her personal and financial information. She does not expressly state she relied on Vaziri and Effective's representations in making loans to Coviare. However, she contends that the damages caused by Vaziri and Effective include her loss of the loaned money through withdrawals from her IRA and her assumption of a home equity loan to raise money to lend Coviare.

4

Weed relied on the representations of Jahangard and Royal by writing "gift" on the check, signing the letters identifying herself as Coviare's cousin, and lending Coviare the $66,000.

"Coviare took advantage of Plaintiff's susceptibility as a widow and her need for companionship when COVIARE engaged Plaintiff in a long term relationship and represented to her that he was a member of the Los Angeles Police Department to induce Plaintiff's reliance, trust and confidence." She was "quite taken by COVIARE's demeanor and personality." In addition, "COVIARE, VAZIRI, JAHANGARD, and ROYAL engaged in a campaign to not only divest Plaintiff of her money and to exploit her personal and financial information, but also to place her under great mental and emotional pressure" to designate the $66,000 as a gift rather than a loan, to use "Plaintiff's feelings towards COVIARE as a way of getting money out of Plaintiff," pressuring her to sign the two letters to say she was Coviare's cousin, and to disclose her personal and financial information. This constituted a conspiracy by which the defendants entered into "an agreement to deprive Plaintiff of her funds" and "to acquire access to Plaintiff's personal and financial information in order to exploit her finances to their benefit."

Coviare "had previously engaged in the same fraudulent conduct through JAHANGARD and ROYAL."

The complaint alleges Weed suffered total consequential damages in the amount of $267,192.78 she loaned to Coviare. She also seeks recovery of general and punitive damages. Her damages include that she "unwittingly exposed herself to identity theft, civil liability, the loss of funds from her IRA and the encumbrance of her home by way of the equity loan she obtained in order to loan COVIARE the funds . . . ." The foregoing are the only items of damages sought in the complaint. Weed also seeks restitution, treble damages, disgorgement, and attorney fees on equitable and statutory causes of action.

The complaint sets forth causes of action against the Broker and Lender defendants for fraud and deceit (first cause of action), conspiracy (fourth cause of action), negligence per se (fifth cause of action), intentional infliction of emotional distress (sixth cause of action), negligent misrepresentation of material fact (eighth cause of action), unfair business practices pursuant to Business and Professions Code section 17200 (ninth cause of action), and unjust enrichment (tenth cause of action). Plaintiff has withdrawn her appeal as to the seventh cause of action. The remaining causes of action are not involved in this appeal.

The trial court sustained demurrers to the original and first amended complaints with leave to amend before it sustained the demurrers of respondents Effective, Vaziri, Royal, and Jahangard to the operative second amended complaint without leave to amend. Additional facts will be set forth below as needed.

## DISCUSSION

### A. Standard of review

We independently review the trial court's ruling sustaining a demurrer to determine de novo whether the complaint alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) "[T]he reviewing court must accept as true not only all facts alleged in the complaint but also facts that may be implied or inferred from those expressly alleged. (*Rose v. Royal Ins. Co.* (1991) 2 Cal.App.4th 709, 716.) We "give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.]" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) We view the evidence "in the light most favorable to plaintiffs as the losing parties." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.) We reverse if the complaint alleges "facts showing entitlement to relief under any possible legal theory." (*Platt v. Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444.)

6

We review an order denying leave to amend by determining "whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

**B.  The trial court properly sustained the demurrers of Effective and Vaziri to the first cause of action for fraud and the eighth cause of action for negligent misrepresentation because causation of damages was insufficiently alleged and one of the alleged misrepresentations was not false**

One of the grounds on which the trial court sustained the demurrers of the Lender defendants to the fraud and negligent misrepresentation causes of action was that Weed had failed adequately to allege that defendants' misrepresentations caused her damages.

In an action for fraud, the standards for pleading reliance on misrepresentations and consequent causation of damages are not rigorous, even though particularity is required.  After reviewing a century's worth of case law addressing the requirement of pleading fraud with specificity, Professor Witkin concluded that the requirement is not very demanding.  "The cases give the impression that entirely too much emphasis has been laid on the requirement of specific pleading.  The characterization of some actions as 'disfavored' has little to recommend it [citation], and actions based on fraud are so numerous and commonplace that the implications of immoral conduct are seldom considered more serious than those involved in other intentional torts.  Hence, while it seems sound to require specific pleading of the facts of fraud rather than general conclusions, the courts should not look askance at the complaint, and seek to absolve the defendant from liability, on highly technical requirements of form in pleading.  Pleading facts in ordinary and concise language is as permissible in fraud cases as in any others, and liberal construction of the pleading is as much a duty of the court in these as in other cases." (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 714, p. 129.)

7

Despite the low bar Weed was required to clear, she did not clear it here.  Weed's complaint attributes two types of misrepresentations to Effective and Vaziri.  The first misrepresentation alleged is that Vaziri, on behalf of himself and Effective, told her "[t]hat the sixty six thousand ($66,000) could not be accepted as borrowed funds unless it was turned into a gift which at that point would be acceptable as part of the completion of the COVIARE loan transaction . . . ."

We find perfectly plausible on its face Vaziri's statement that $66,000 in Coviare's pocket as the result of a gift would provide an acceptable basis for extending credit, whereas an IOU in his pocket, requiring him to pay back that amount to Weed would not.  We cannot infer from anything in Weed's complaint that Vaziri's statement was false or misleading.

To state a cause of action for fraud, a plaintiff also must allege damage *caused by* reliance on the misrepresentations.  (*Seeger v. Odell* (1941) 18 Cal.2d 409, 414.)  One of the most illuminating discussions of the necessary causal relationship is an old one.  In *Woodson v. Winchester* (1911) 16 Cal.App. 472, a land buyer alleged the seller had represented that the land had certain fruit trees on it, but did not allege that he was damaged when it turned out the representation was inaccurate.  For all the court knew, he was buying it without any interest in fruit trees.  The court stated:  "It must be shown in the pleading that the damage claimed was sustained by reason of the fraud and should show the relation between the fraud and the damage alleged; that is, it must appear that the fraud and the damage sustain to each other in the relation of cause and effect."  (*Id.* at pp. 476–477.)  The court observed that the trial court's analysis had been sound:  The pleading must demonstrate "that the damage resulted therefrom to the defendant in the sequence of cause and effect," showing "wherein and to what extent [the misrepresentations] were false, and [the complaint] stated such facts as showed that damage must have resulted from such false statements."  (*Id.* at p. 477; *Maynes v. Angeles Mesa Land Co.* (1938) 10 Cal.2d 587, 589–590; *Senter v. Monroe* (1888) 77 Cal.

8

347, 349–351; *Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1818–1819.)

Even if the statement that the $66,000 "could not be accepted as borrowed funds unless it was turned into a gift" were false, we cannot see how it could have caused Weed to lend Coviare the money. Indeed, Weed alleges herself that the cause of her lending him the money was that "Coviare took advantage of Plaintiff's susceptibility as a widow and her need for companionship when COVIARE engaged Plaintiff in a long term relationship and represented to her that he was a member of the Los Angeles Police Department to induce Plaintiff's reliance, trust and confidence" and that she was "quite taken by COVIARE's demeanor and personality." That she also alleges that the Lender defendants took advantage of that situation does not make it any more plausible that their largely irrelevant representations caused her to lend money to Coviare.

During oral argument, Weed's counsel was unable to articulate any scenario by which the representations could have caused Weed to lend the $66,000, or any other amount, to Coviare.

The second set of representations by Effective and Vaziri concerns Weed's personal and financial information. Weed contends that Vaziri told her it would not be used or disclosed for any purpose but Coviare's home loan, but that Effective and Vaziri gave it to Jahangard, who then asked her to invest in Royal. She alleges as damages arising from these representations she "unwittingly exposed herself to identity theft, civil liability, the loss of funds from her IRA account, the encumbrance of her home by way of the equity loan she obtained in order to loan COVIARE the funds needed to purchase the PROPERTY, all in sums for compensatory damages at trial."

Weed's allegations of exposure to identity theft and civil liability do not have any causal connection to damages. As noted by the court in *Blain v. Doctor's Co.* (1990) 222 Cal.App.3d 1048, 1063, "exposure to liability" does not constitute damages. By a parity of reasoning, neither does exposure to identity theft that has not occurred or to a solicitation to invest that has not resulted in investment.

9

If Vaziri's representation that she needed to provide her personal and financial information would have had any effect at all on a reasonable person, it would have been a disincentive to go through with the process, even if the information was going to be kept confidential and to be used only for the reasons stated by the lender. We cannot see how this representation would make Weed lend money to Coviare. Indeed, Weed's allegations suggest that she lied about the gift and provided her personal and financial information to *assure* the loan was made, not in reliance on any representation. At oral argument, Weed's counsel conceded that the misrepresentations concerning her personal and financial information did not cause Weed any damages.

Weed's allegations as to Effective and Vaziri do not state a cause of action for fraud.

The trial court's minute order does not address the eighth cause of action for negligent misrepresentation of a material fact. When the court made its order of dismissal as to all causes of action including the eighth for negligent misrepresentation, however, it appeared to sustain the defendants' demurrers to that cause of action either on the ground that the defendants had not inflicted damages on Weed or that defendants did not have any duty to Weed. We treat the order as one sustaining the demurrer to the eighth cause of action for failure to allege causation of damages. As the analysis for negligent misrepresentation is the same as for fraud, with the exception of the scienter element which is not relevant here, we find that the trial court properly sustained the demurrers to the eighth cause of action for negligent misrepresentation as well as to the first cause of action for fraud and deceit.

**C. The trial court properly sustained the demurrers of Royal and Jahangard to the first cause of action for fraud and the eighth cause of action for negligent misrepresentation because a causal connection between the misrepresentations and damages was insufficiently alleged and at least one representation was not false**

One of the grounds on which the trial court sustained the demurrers of the Broker defendants to the fraud and negligent misrepresentation causes of action was that Weed

10

had failed adequately to allege that defendants' misrepresentations caused her damages. We again review Weed's allegations to determine if the required causal relationship between the representations and Weed's damages may be inferred. Again, we cannot see a connection. The Broker defendants allegedly stated that "it was the normal custom and practice of the real estate lending industry to have a secondary source [of money] sign off on a source of funds as a gift" and "to sign documents" stating that "a borrower and a second source of income were related when they were not," and that these were normal parts of the process of obtaining a home loan.

These statements do not appear to have had any logical relationship to Weed's decision to lend Coviare money for the house. Rather, they appear logically related to Weed's preexisting determination to assure he get the house. She had already decided to loan him the money and the question was how to loan it to him to maximize his chances of having the loan approved.

In addition, the pleadings do not reveal anything that would lead us to disbelieve the Broker defendants' representation that "borrowed monies could not be used as a down payment" on the purchase of a home. Thus, this does not appear from the face of the complaint to be a false representation.

Again, Weed has failed to clear the relatively low bar for pleading causation of damages and thus has failed to state a cause of action for fraud. In addition, at oral argument Weed's counsel was unable to articulate any scenario by which the representations could have caused Weed to lend the $66,000, or any other amount, to Coviare.

The same analysis applies to the eighth cause of action for negligent misrepresentation, which we again treat as having been sustained on the ground of failure adequately to allege causation of damages. We conclude the trial court properly sustained the demurrers of Royal and Jahangard to the first cause of action for fraud and deceit and the eighth cause of action for negligent misrepresentation.

11

**D. The trial court erred in sustaining the demurrers to the fourth cause of action for conspiracy**

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511.)

"Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, *supra*, 7 Cal.4th at p. 511.) "'[I]t is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action.' [Citation.]" (*Ibid.*) "'"The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design. . . . In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity."'" (*Ibid.*)

In her conspiracy count, Weed alleges "COVIARE, VAZIRI, JAHANGARD, EFFECTIVE and ROYAL engaged in an agreement to deprive Plaintiff of her funds under pretense that COVIARE needed funds to purchase the PROPERTY. Another goal of the agreement between these defendants was to acquire access to Plaintiff's personal and financial information in order to exploit her finances to their benefit. Plaintiff alleges that the conspiracy between these defendants was complete when through the application of pressure upon Plaintiff and exploitation of her feelings for COVIARE, Plaintiff was persuaded by VAZIRI to open her finances to Vaziri, to pay . . . $267,192.78 . . . to COVIARE, to sign documents which exposed Plaintiff to potential civil liability, and

12

caused her own property to be encumbered as a result of the funds loaned to COVIARE."
Weed further alleges that these defendants did the acts attributed to them in the complaint
in furtherance of the conspiracy and that she suffered damages as a result thereof.

Weed adequately has alleged the elements of civil conspiracy as to all five
defendants. Effective, Vaziri, Royal, and Jahangard all may be liable for the acts of
Coviare if the elements of conspiracy are proven. It is unnecessary for the acts of
Effective, Vaziri, Royal, and Jahangard to have damaged Weed, so long as the acts of
Coviare did. Therefore, the trial court erred in sustaining the demurrers of Effective,
Vaziri, Royal, and Jahangard to the fourth cause of action for conspiracy.

**E. The trial court properly sustained the demurrers to the fifth cause of action for negligence per se**

Negligence per se is not a cause of action. It is an evidentiary presumption.
(Evid. Code, § 669.) The negligence per se count is surplusage which the trial court was
entitled to dismiss pursuant to demurrer. (*Selleck v. Globe International, Inc.* (1985) 166
Cal.App.3d 1123, 1135–1136.) Moreover, the evidentiary presumption would have been
applied to the negligent misrepresentation cause of action that has failed for lack of
damages and is surplusage for that reason as well.

**F. The trial court properly sustained the demurrers to the sixth cause of action for intentional infliction of emotional distress**

The tort of intentional infliction of emotional distress requires "actual and
proximate causation of the emotional distress by the defendant's outrageous conduct."
(*Cervantez v. J. C. Penney Co.* (1979) 24 Cal.3d 579, 593.) Weed's failure adequately to
allege that the Broker and Lender defendants caused her damages is fatal to this cause of
action as well.

13

**G.  The trial court properly sustained the demurrers to the ninth cause of action for violation of Business and Professions Code section 17200 et seq., the Unfair Competition Law (UCL)**

"While the scope of conduct covered by the UCL is broad, its remedies are limited.  [Citation.]  A UCL action is equitable in nature; damages cannot be recovered.  [Citation.]  . . .  [U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'  [Citation.]"  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144; *id.* at p. 1146.)

In *Korea Supply Co. v. Lockheed Martin Corp.*, our Supreme Court distinguished between restitution and disgorgement of profits.  The court explained that "'restitution'" is the return of property "'to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person.'  [Citation.]"  (29 Cal.4th at pp. 1144–1145.)  By contrast, "'disgorgement' is a broader remedy than restitution" that can entail the disgorgement of money or property to persons other than those from whom the property was taken.  (*Id.* at p. 1145.)

Restitution is a remedy available to private plaintiffs under the UCL, whereas disgorgement to persons who did not have a previous ownership interest in the money or property (or those claiming through them) is not.  (*Korea Supply Co. v. Lockheed Martin Corp.*, *supra*, 29 Cal.4th at pp. 1144–1145, 1146.)  "Under the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest."  (*Id.* at p. 1148.)  In other words, in an individual action brought under the UCL, a plaintiff can only recover money from the person to whom he or she paid it.  (*Id.* at p. 1149.)

In the current action, neither the Lender defendants nor the Broker defendants obtained money directly from Weed.  Since they did not get it from her, she cannot get it back from them under the UCL.

The court properly sustained the demurrers on Weed's UCL claims.

14

**H.  The trial court erred in sustaining the demurrers of the defendants to the tenth cause of action for unjust enrichment**

California courts have long recognized that a count entitled "unjust enrichment" simply constitutes a request by the plaintiff for the remedy of restitution, whereby the plaintiff seeks to have a benefit obtained by the defendant redirected to himself or herself. Thus, Weed's "unjust enrichment" cause of action is a request for restitution.

"An individual is required to make restitution if he or she is unjustly enriched at the expense of another.  [Citations.]  A person is enriched if the person receives a benefit at another's expense.  [Citation.]  Benefit means any type of advantage.  [Citations.]  [¶] The fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it. [Citation.]"  (*First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662– 1663.)

A count titled "unjust enrichment" also may be interpreted as a request by the plaintiff that the defendant disgorge monies it obtained unjustly.  (E.g., *County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 542.)  Sometimes "'liability based on unjust enrichment . . . [does] not involve the restoration of anything the claimant previously possessed . . . includ[ing] cases involving the disgorgement of profits . . . wrongfully obtained . . . .'  [Citation.]  '[T]he public policy of this state does not permit one to "take advantage of his own wrong"' regardless of whether the other party suffers actual damage.  [Citation.]  Where 'a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust . . . the defendant may be under a duty to give to the plaintiff the amount by which [the defendant] has been enriched.'"  (*Ibid*.; *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1013.)  "'"[I]t is not essential that money be paid directly to the recipient by the party seeking restitution. . . ."'"  [Citations.]  The emphasis is on the wrongdoer's

15

enrichment, not the victim's loss.  In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all profit because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again.  [Citations.]  Disgorgement may include a restitutionary element, but it "'may compel a defendant to surrender all money obtained through an unfair business practice . . . regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.'"  [Citation.]  Without this result, there would be an insufficient deterrent to improper conduct that is more profitable than lawful conduct."  (*County of San Bernardino v. Walsh*, *supra*, 158 Cal.App.4th at pp. 542–543.)

Turning to the facts of this case, we indulge all reasonable inferences in favor of Weed on demurrer.  Reasonable inferences which we accept as true are that Royal was Coviare's real estate broker and received a brokerage commission on the sale of the house to Coviare.  We also accept as true Weed's allegation that "Coviare had previously engaged in the same fraudulent conduct through Jahangard and Royal."  Finally, we accept the inference that Effective made a home loan to Coviare and received a fee or other consideration for making the loan.

Weed's allegations are sufficient to allow her to obtain the remedies of restitution or disgorgement if she prevails on her conspiracy cause of action.  The second amended complaint and reasonable inferences drawn therefrom states facts that indicate that Royal and its alter ego, Jahangard, benefited from the wrongful act of pressuring Weed to get "money out of Weed," to designate $66,000 as a gift, to sign the "cousin" letters, and to provide her personal and financial information for their use.  The benefit they received was their brokerage commission.  If they had previously assisted Coviare in similar schemes, there may be additional brokerage commissions by which they obtained a benefit unjustly at the expense of Weed or others, so that it is unjust for Royal and its alter ego to retain the benefit.  Weed may be entitled to restitution or disgorgement even though it was not her own money that went into Royal's pocket as a brokerage commission.  Similarly, Effective and its alter ego Vaziri benefited by receiving a fee on

16

the loan and might have been unjustly enriched in that way if they participated in a conspiracy.

The trial court erred in sustaining the demurrers of the defendants to Weed's unjust enrichment count.

**I. The trial court did not abuse its discretion in sustaining the demurrers without leave to amend**

The demurrers at issue here were to Weed's second amended complaint. The Broker defendants previously had demurred to the original and first amended complaints, raising many of the arguments raised here. Weed had three opportunities to allege facts sufficient to state a cause of action and has been unable to do so.

In addition, Weed had the opportunity in her opposition to the demurrer to the second amended complaint, at the hearing on that demurrer, and in her briefs and oral argument on appeal to make an offer of proof showing how she might amend to state causes of action. She has been unable to do so.

On this record, we conclude the trial court did not abuse its discretion in finding Weed was unable to amend to state certain causes of action and consequently denying leave to amend.

**J. Conclusions**

The trial court properly sustained the demurrers of Effective, Vaziri, Royal and Jahangard to the first cause of action for fraud and the eighth cause of action for negligent misrepresentation.

The trial court erred in sustaining the demurrers to the fourth cause of action for conspiracy.

The trial court properly sustained the demurrers to the fifth cause of action for negligence per se.

The trial court properly sustained the demurrers to the sixth cause of action for intentional infliction of emotional distress.

17

The trial court properly sustained the demurrers to the ninth cause of action pursuant to Business and Professions Code section 17200 et seq.

The trial court erred in sustaining the demurrers of the defendants to the tenth cause of action for unjust enrichment.

The trial court did not abuse its discretion in sustaining the properly sustained demurrers without leave to amend.

It is unnecessary in light of the foregoing to reach the issue of unclean hands.

## DISPOSITION

The judgments of dismissal are reversed.  The trial court's orders sustaining the demurrers to the fourth cause of action for conspiracy and the tenth cause of action for unjust enrichment are reversed.  The trial court's remaining orders are affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


ROTHSCHILD, Acting P. J.


JOHNSON, J.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.