Filed 2/24/15  Gonzalez v. JPMorgan Chase Bank CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| FELIPE GONZALEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JPMORGAN CHASE BANK, N.A. et al.,<br><br>    Defendants and Respondents. | B252568<br><br>(Los Angeles County<br>Super. Ct. No. LC097089) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Frank Johnson, Judge.  Affirmed.

Law Offices of Lenore Albert, Lenore L. Albert for Plaintiff and Appellant.

AlvardoSmith, S. Christopher Yoo, Mariel A. Gerlt for Defendants and Respondents.

## INTRODUCTION

Plaintiff and appellant Felipe Gonzalez (plaintiff) appeals from a judgment entered on the trial court's order sustaining without leave to amend the demurrers of defendants and respondents JPMorgan Chase Bank, N.A. (Chase) and Federal National Mortgage Association (Fannie Mae).[1] According to plaintiff, the trial court erred when it sustained the demurrers to each of the five causes of action pleaded in his third amended complaint and abused its discretion when it denied him leave to amend his complaint.

We hold that the trial court did not err in sustaining the demurrers to each of the five causes of action in the complaint and did not abuse its discretion by sustaining the demurrer without granting further leave to amend. We therefore affirm the order sustaining the demurrer without leave to amend and the judgment entered on that order.

## FACTUAL BACKGROUND

### A.     General Allegations

In connection with plaintiff's purchase of a single family residence in Van Nuys, California, he entered into a deed of trust (deed of trust) with Chase that secured a loan in the amount of $387,750. In December 2008, plaintiff received a letter from Chase and Fannie Mae stating that his loan was in default and informing him that Chase and Fannie Mae had loan modification programs to assist plaintiff. The letter advised plaintiff to call a specific phone number to qualify for a program.

Plaintiff called the number and provided Chase with all the information that it requested to determine if he qualified for a loan modification. Thereafter, plaintiff called Chase periodically to determine whether he qualified for a loan modification.

In March 2009, Chase recorded an assignment of the deed of trust. Plaintiff thereafter received notice that his home would be sold at a foreclosure sale. In response

---

[1]     Chase and Fannie Mae are referred to collectively as defendants.

to the notice, plaintiff called the Chase home retention department. A Chase representative informed plaintiff that he was required to send Chase a $6,000 check to demonstrate that he had sufficient funds to begin the process of obtaining a loan modification and to stop the foreclosure sale. In April 2009, plaintiff obtained a $6,000 check and sent it to Chase, which cashed it. Although the foreclosure sale was postponed, plaintiff did not receive a loan modification application, a "Home Saver Plan,"[2] or a "Trial Period Payment Plan."[3]

Following plaintiff's complaint to the Office of the Comptroller of Currency, plaintiff was informed by an employee of Chase Home Finance, LLC in the executive resolution group that he was qualified for a "forbearance agreement." The representative sent plaintiff a 90-day forbearance plan that required payments of $1,049.06 a month for the three-month period of August through October 2009. The forbearance plan, however, did not comply with Fannie Mae's guidelines requiring servicers to first attempt to qualify borrowers for a loan modification under the Home Affordable Modification Program. Plaintiff made the three monthly payments required under the forbearance plan, but, at the end of the 90-day period, Chase did not permanently modify plaintiff's loan or place him in any federal loan modification program. In response, plaintiff called Chase multiple times inquiring about a loan modification.

In January 2010, plaintiff received a Trial Period Payment Plan from Chase that stated that plaintiff's mortgage modification had begun. At the bottom of the first page of the packet, Chase stated, "If [the borrower is] in compliance with this Trial Period Plan (the 'Plan') and [the borrower's] representations in Section 1 continue to be true in all material respects, then the Lender will provide [the borrower] with a Home Affordable

---

**2** According to plaintiff, after the enactment of the Federal Making Home Affordable Program, in February 2009, of which the Home Affordable Modification Program was a part, Fannie Mae created the HomeSaver Plan as a new foreclosure prevention plan.

**3** A Trial Period Payment Plan is part of the Home Affordable Modification Program.

3

Modification Agreement ('Modification Agreement'), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage." Chase also advised plaintiff that he was required to send Chase the documents listed in the packet by February 5, 2010.

On January 30, 2010, plaintiff signed and returned the Trial Period Payment Plan to Chase, along with a check in the amount of $1,290.84 and the documents listed in the packet. Thereafter, plaintiff made the remaining two Trial Period Payment Plan payments by checks of $1,290.84, which checks Chase cashed. Throughout the trial period, plaintiff remained qualified for a permanent loan modification under the Home Affordable Modification Plan. At the end of the trial period, Chase did not permanently modify plaintiff's loan. Instead, Chase stated that it needed more time to process plaintiff's paperwork. Chase also represented that during the modification process, it would not foreclose on plaintiff's home. The Trial Period Payment Plan provided: "As long as you comply with the terms of the Trial Period Plan, we will not start foreclosure proceedings or conduct a foreclosure sale if foreclosure proceedings have started."

Plaintiff continued to make the reduced payments of $1,290.84 to Chase from May 2010 through September 2010. During that time, plaintiff contacted Chase on multiple occasions to check on the status of his loan modification. On September 24, 2010, a Chase representative told plaintiff that his "modification [had] been Approved [and] he [would] be receiving [his] final Modification within 30 days." The representative also assured plaintiff by telephone that the foreclosure sale of his home set for September 27, 2010, was postponed.

On October 8, 2010, an assignment of deed of trust in favor of the insurer, Fannie Mae, was recorded. On that same day, a trustee's deed upon sale was recorded transferring title to plaintiff's property to Fannie Mae for a credit bid of $445,594.12. Plaintiff never received a letter informing him that his loan modification had been denied or that Chase was going to resume foreclosure proceedings prior to the sale of his property.

4

Plaintiff next received a three-day notice to quit dated October 15, 2010, signed by Fannie Mae's attorneys. Fannie Mae then filed an unlawful detainer action against plaintiff. Notwithstanding the foreclosure sale, plaintiff continued to receive correspondence and notices from Chase representing that it was still servicing plaintiff's loan. Plaintiff received a letter from a Chase representative dated September 28, 2010, stating that plaintiff's "permanent modification is almost complete. This is your chance to come in, meet with our local mortgage professionals and finish up everything so your modification isn't in jeopardy." Plaintiff also received a letter from Chase dated November 13, 2010, informing him that Chase had finally determined that he was not qualified for a Home Affordable Modification Program loan modification because he had not provided Chase with documents Chase requested from plaintiff after the foreclosure sale.

Chase thereafter sent plaintiff a rate change notice informing him that his monthly mortgage payment had reset under the terms of the original note from 2,098.41 to $1,089.41 per month starting September 1, 2012. That notice also advised plaintiff that his principal balance was $387,345.35 and his interest rate under the terms of the original note had decreased to 3.375% as of August 1, 2012. Plaintiff continued to make his monthly payments of $1,089.41 per month to Chase, and Chase continued to accept and cash the checks for those payments.

On January 28, 2013, Chase filed a proof of claim for the original mortgage in plaintiff's Chapter 13 proceeding, thereby impliedly representing that Chase was never paid by Fannie Mae for plaintiff's loan and admitting that the foreclosure sale was a sham. On January 28, 2013, Chase caused notice of rescission of trustee's deed of sale upon foreclosure to be recorded, thereby reverting title back to plaintiff. As of the date of the third amended complaint, plaintiff had not received any permanent resolution assuring him that he would maintain ownership of his home, and the notice of default and notice of sale had not been rescinded.

### B.    First Cause of Action for Breach of Contract

In support of his breach of contract cause of action, plaintiff incorporated by reference all of the prior allegations of the third amended complaint and further alleged as follows:  Chase promised that it would modify plaintiff's loan under the Home Affordable Modification Program after he timely made all trial period payments, as long as all the information he had provided Chase remained true during the trial period. Plaintiff performed all the conditions of this Trial Period Payment Plan, including but not limited to repeatedly sending all of the required documents, except for those that were waived or excused.  Chase breached the Trial Period Payment Plan agreement by failing to modify plaintiff's loan after he made all of his trial period payments in 2010.  As a result of Chase's breach, Chase foreclosed on plaintiff's home and plaintiff did not receive the promised modification.

Chase's representatives reiterated and assured plaintiff that they would not proceed or continue with the foreclosure while they were reviewing the proposed loan modification agreement of the first trust deed.  Plaintiff was unaware that a date for a trustee's sale had been set.  A Chase representative reassured plaintiff that the modification was approved and the foreclosure sale set for September 27, 2010, was postponed.  That promise was originally made to plaintiff in writing as part of the modification package he received.  Chase breached that promise by allowing the foreclosure sale of plaintiff's property on September 27, 2010.  As a proximate result of Chase's breach, plaintiff suffered general and special damages.

### C.    Second Cause of Action for Promissory Estoppel

In support of his second cause of action for promissory estoppel, plaintiff incorporated by reference each of the prior allegations of the third amended complaint and further alleged as follow:  In reliance on Chase's promise to modify his loan and to postpone the foreclosure sale, plaintiff did not seek other relief to postpone the foreclosure sale.  Plaintiff's reliance was reasonable because he had not received from Chase prior to the sale a written denial of his loan modification and all the writings and

6

telephone calls he did receive from Chase assured him that no foreclosure would go forward and that he was eligible for a loan modification under the Home Affordable Loan Program. As a proximate result of defendant's breaches, plaintiff suffered general and special damages.

### D. Third Cause of Action for Negligent Misrepresentation

In support of his third cause of action for negligent misrepresentation, plaintiff incorporated by reference all of the prior allegations in the third amended complaint and further alleged as follows: On September 24, 2010, a Chase representative informed plaintiff in writing that his loan modification had been approved and further informed him by telephone that the foreclosure sale had been postponed.

On January 30, 2010, plaintiff signed and returned the Trial Period Payment Plan to Chase along with a check for $1,290.84, and the documents listed in the modification packet. Plaintiff thereafter timely made the remaining two monthly payments of $1,290.84. Throughout the trial period, plaintiff's representations to Chase remained true, and he was otherwise qualified for a permanent loan modification under the Home Affordable Modification Program. At the end of the trial period, Chase did not permanently modify plaintiff's loan and instead represented that it needed more time to process plaintiff's paperwork.

Chase also represented that during the modification process, it would not foreclose on plaintiff's home. As a result, plaintiff continued to make monthly payments of $1,290.84 to Chase from May 2010 through September 2010.

At the time Chase made those representations, it knew or had reason to know that they were not true. In reliance on those representations, plaintiff submitted all of the required documentation, signed verifications under oath, and made the trial period payments to Chase. Plaintiff's reliance was reasonable because the representations were made by Chase representatives on Chase letterhead. In addition, plaintiff's loan was a Fannie Mae loan and Fannie Mae guidelines provided that the HomeSaver Plan was a new foreclosure prevention plan that was added as an alternative for those borrowers that

7

failed to qualify for the Home Affordable Modification Program. The Fannie Mae guidelines further obligated the loan servicer to "evaluate and identify a permanent solution during the first three months of the forbearance period and should implement the alternative by the end of the sixth month." As a result of Chase's representations, plaintiff was "lulled into inaction" based on his belief that he would not be foreclosed upon. As a proximate result of defendant's conduct, plaintiff had been emotionally and financially injured.

### E.     Fourth Cause of Action for Fraud

In support of his fourth cause of action for fraud, plaintiff incorporated by reference each of the prior allegations of the third amended complaint. Plaintiff did not provide any further factual allegations and instead alleged that Chase intended that plaintiff rely on the representations specifically alleged in his promissory estoppel cause of action and that he did, in fact, rely on those representations. As a proximate result of Chase's conduct, plaintiff was financially and emotionally injured.

### F.     Fifth Cause of Action for Violation of UCL

In support of his fifth cause of action for violation of the Unfair Competition Law, Business and Professions Code 17200 et seq. (UCL), plaintiff incorporated by reference each of the prior allegations of his third amended complaint and further alleged as follows: From 2010 through the filing of the third amended complaint, Chase and Fannie Mae violated California foreclosure laws, including Civil Code section 2924g, subdivision (c)(1), which provides that a foreclosure sale can be postponed, orally or in writing, by mutual agreement. Plaintiff had oral and written agreements to postpone the foreclosure sale of his property that were unlawfully violated by Chase. From 2009 to the present, Chase and Fannie Mae violated Civil Code section 2923.5, subdivision (a), which required a mortgagee, beneficiary, or authorized agent to contact the borrower by telephone to assess the borrower's financial situation and explore options for avoiding foreclosure. Chase and Fannie Mae also violated Civil Code section 2924g, which

8

required that a default notice must include a declaration of compliance from a mortgagee, beneficiary, or authorized agent of compliance with section 2923.5, including compliance with the requirement to use due diligence to contact the borrower. Neither Chase nor Fannie Mae assessed plaintiff's financial situation correctly or in good faith prior to filing either of the notices of default against the property. Chase and Fannie Mae committed an unlawful, unfair, and fraudulent business practice when they breached the Trial Period Payment Plan.

Beginning in 2009, Chase and Fannie Mae committed the following acts of unfair competition: Chase and Fannie Mae did not police or investigate whether their employees were making accurate communications to their customers or whether their communications about the foreclosure status of a home were timely and correct; and Chase continued to refuse to police or investigate the republishing of its messages about the status of loan modifications and foreclosure sales and continued to mislead the general public to believe that home foreclosure sales were postponed or that loans were approved for modification when such communications were not accurate. Plaintiff not only suffered an unexpected property loss, but he also suffered emotional distress.

## PROCEDURAL BACKGROUND

After demurrers were sustained to his complaint and first amended complaint with leave to amend, plaintiff filed a second amended complaint to which defendants again demurred. Following oral argument, the trial court sustained the demurrer to the second amended complaint, but provided plaintiff leave to amend " to address the issues raised in *West* [*v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780 (*West*)]." The trial court further stated that it would provide plaintiff "an opportunity to file a third amended complaint, but in a way that addresses the defendant's concerns raised both in their demurrer and today in oral argument as to why the *West* case didn't apply."

Plaintiff filed a third amended complaint asserting causes of action for breach of contract, promissory estoppel, fraud, negligent misrepresentation, and violation of the

9

UCL. Defendants then filed, inter alia, a demurrer. Following oral argument, the trial court sustained the demurrer without leave to amend. The trial court's minute order provided as follows: "As to the 1st (breach of contract) and 2nd (promissory estoppel) causes of action, the Court notes that there is conflict between the citations *West v. Chase* and *Nungary v. Litton* (and *Grill v. BAC*) as to the status of Trial Period Plans (TPP) for loan modifications. In *West* the parties mutually agreed that the TPP constituted a contract. However, there is no such agreement as to a contract by the parties in this action. Likewise, without a contract, promissory estoppel fails as there is nothing to rely on. [¶] As to the 3rd (negligent misrepresentation) cause of action, the TPP and allegations in the 3rd amended complaint are too vague and plaintiff is unable to identify any promise. There is essentially nothing for the Court to enforce. [¶] As to the 4th (fraud) cause of action, the 3rd amended complaint is not plead[ed] with the necessary specificity to support the allegation. [¶] As to the 5th (Business and Professions Code section 17200) cause of action, the Court finds [no] illegal business practices. [¶] Given the Court's findings as above, and good cause appearing, defendants' demurrer to the 3rd amended complaint is sustained in its entirety, without leave to amend."

## DISCUSSION

### A. Standard of Review

On review of a trial court's order sustaining a demurrer, we examine the complaint de novo to determine if it states a cause of action. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) As the Supreme Court has observed, "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether

10

the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## B. Adequacy of Record

In his appellant's appendix, plaintiff failed to include certain documents, including defendants' demurrer, and he also failed to provide the reporter's transcript of the hearing on the demurrer. The documents necessary from the plaintiff's appendix have been supplied by defendants. But without the reporter's transcript on appeal, we cannot determine whether plaintiff orally requested leave to amend or proposed specific amendments. Nor can we determine the trial court's response, if any, to such request and proposals. Moreover, plaintiff has failed to satisfy his burden on appeal of demonstrating how his complaint could be amended and how such amendments would change the legal effect of his pleading. (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1467-1468 [plaintiff has the burden to show in what manner he or she can amend the complaint and how that amendment will change the legal effect of the pleading]; *People ex. rel Brown v. Powerex Corp.* (2007) 153 Cal.App.4th 93, 112 [appellant has the duty to spell out in his brief the specific proposed amendments on appeal].) In short, we cannot determine on the record and briefs provided that the trial court abused its discretion in denying plaintiff leave to amend. Thus, as to the order denying plaintiff leave to amend, we affirm on the ground that the record is inadequate to rule otherwise.

## C. Judge Kussman's Ruling on Demurrer to Second Amended Complaint

Plaintiff contends that in ruling on defendants' demurrer to the second amended complaint, Judge Kussman made a substantive finding that plaintiff could state causes of action consistent with the claims involved in *West, supra,* 214 Cal.App.4th 780 and

11

therefore that Judge Johnson erred when he subsequently ruled that the decision in *West* was not applicable to the facts pleaded in the third amended complaint. Neither the minute order nor the reporter's transcript of that hearing, however, support plaintiff's contention. Rather, it is clear from the order and transcript that Judge Kussman merely granted plaintiff leave *to attempt* to state causes of action consistent with the claims asserted in *West*. But, in granting plaintiff leave to amend, the judge made no ruling on the legal merits of a proposed pleading, nor could it have as no proposed pleading was before the court. Therefore, there is no merit to plaintiff's contention in this regard.

### D.     Analysis

#### 1.     *First Cause of Action for Breach of Contract*

Plaintiff contends that he stated causes of action for breach of the Trial Period Payment Plan agreement and breach of the forbearance plan agreement under Fannie Mae's HomeSaver Plan. According to plaintiff, the decisions in *West, supra,* 214 Cal.App.4th 780 and *Corvello v. Wells Fargo Bank, N.A.* (9th Cir. 2013) 728 F.3d 878 establish, as a matter of law, that a Trial Period Payment Plan creates an agreement to modify a loan that is enforceable by borrowers who complete their obligations under the plan.

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff. (*Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 830 [69 Cal.Rptr. 321, 442 P.2d 377].)" (*Oasis West Realty, LLC v. Goldman (*2011) 51 Cal.4th 811, 821.)

Assuming without deciding that the Trial Period Payment Plan and the forbearance agreement alleged in the third amended complaint constitute enforceable agreements, plaintiff's breach of contract cause of action based on those plans was nevertheless deficient. First, those agreements were allegedly in writing. Therefore, plaintiff was required to allege the material terms verbatim in the body of the third

amended complaint or attach copies of them to the complaint as exhibits. (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307; *Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 458-459.) Because plaintiff did not comply with either of these well-established pleading requirements, the trial court properly sustained the demurrer to the breach of contract cause of action.[4]

Second, the breach of contract cause of action was also defective because plaintiff failed to allege adequately damages. According to plaintiff, defendants breached the Trial Period Payment Plan agreement by foreclosing on plaintiff's property. But the plaintiff also specifically alleged that Chase subsequently caused the trustee's deed upon sale to be rescinded, thereby reverting title back to plaintiff, and did not allege that plaintiff ever lost possession of the property. In addition, the plaintiff affirmatively alleged that defendant's monthly payments to Chase, which he continued to pay, were substantially reduced during the period between the foreclosure and rescission. Although plaintiff alleged that he suffered general and special damages as a result of the foreclosure sale, there are no allegations that would support those conclusory allegations. (See *Zumbrum v. University of Southern California* (1972) 25 Cal.App.3d 1, 12 ["allegations of damages without allegations of fact to support them are but conclusions of law, which are not admitted by demurrer," citing *D'Andrea v. Pringle* (1966) 243 Cal.App.2d 689, 696].) Because there are no facts pleaded in the third amended complaint to support plaintiff's claim of damage and because plaintiff specifically alleged facts that support contrary conclusion, the trial court properly sustained the demurrer to the breach of contract cause of action.

In addition, plaintiff in his third amended complaint fails to allege facts sufficient to support a breach of contract claim against Fannie Mae. Although plaintiff argues that he was entitled to a forbearance agreement from Fannie Mae under the HomeSaver Plan,

---

[4]     Plaintiff refers to a local rule limiting the number of pages of exhibits when filing by facsimile to 10 pages. (Los Angeles Superior Court Rules, rule 2.22(8), adopted eff. July 2, 2011, as amended, eff. January 1, 2012; January 1, 2014.) But plaintiff could have filed in the normal manner.

he specifically alleges, in paragraph 41, that the forbearance agreement that he did receive was sent to him by a representative of Chase and, in paragraph 43, that he sent the monthly payments required under that agreement to Chase. Thus, the allegations of the third amended complaint were insufficient to state the existence of an enforceable agreement between plaintiff and Fannie Mae.

### 2.  *Cause of Action for Promissory Estoppel*

Plaintiff contends that the trial court erred when it concluded that because the Trial Period Payment Plan was not an enforceable contract, plaintiff could not state a cause of action for promissory estoppel based on that Plan. According to plaintiff, because the Trial Period Payment Plan was an enforceable contract, he adequately stated a promissory estoppel cause of action based thereon.

"In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' (Rest.2d Contracts, § 90, subd. (1), p. 242; see *C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 6 [151 Cal.Rptr. 323, 587 P.2d 1136] [§ 90 'has been judicially adopted in California'].) Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 672 [111 Cal.Rptr. 693, 517 P.2d 1157].)" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310; *C & K Engineering Contractors v. Amber Steel* Co., *supra,* 23 Cal.3d at p. 6.)

Even if plaintiff adequately alleged the existence of an enforceable promise on which he reasonably relied, he cannot show the requisite detriment. According to plaintiff, in reliance on Chase's alleged promises, he did "not seek other relief," presumably meaning that he failed to take adequate steps to avoid the foreclosure. But

14

plaintiff did not allege that he lost possession of the property, and the foreclosure sale that allegedly resulted from plaintiff's inaction was thereafter rescinded. In addition, plaintiff's monthly payments to Chase continued during the period between the foreclosure and the rescission and the amount of those payments was substantially less than the payments due under the original loan. Given those allegations, plaintiff did not and could not state facts sufficient to show detriment. The trial court therefore properly sustained the demurrer to the promissory estoppel cause of action.

### 3. Causes of Action for Fraud and Negligent Misrepresentation

Plaintiff argues that the trial court erred when it concluded that the allegations of the third amended complaint were too vague to support claims for negligent and intentional misrepresentation. According to plaintiff, he specifically alleged that (i) a Chase representative told him on September 24, 2010, that his loan modification had been approved; and (ii) Chase also promised not to foreclose so long as plaintiff complied with the terms of the Trial Period Payment Plan.

"The elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage. (*Small v. Fritz Companies, Inc*. (2003) 30 Cal.4th 167, 173 [132 Cal.Rptr.2d 490, 65 P.3d 1255].) The tort of negligent misrepresentation, a species of the tort of deceit (*Bily v. Arthur Young & Co*. (1992) 3 Cal.4th 370, 407 [11 Cal.Rptr.2d 51, 834 P.2d 745]), does not require intent to defraud but only the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true. (*Small, supra*, 30 Cal.4th at pp. 173-174.)" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255.)

"Every element of a fraud cause of action must be specifically pleaded. (*Service By Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807 [52 Cal.Rptr.2d 650]; *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157 [2 Cal.Rptr.2d 861].) This pleading requirement of specificity applies not only to the alleged

15

misrepresentation, but also to the elements of causation and damage. As this court stated in *Service By Medallion, Inc.*, 'In order to recover for fraud, as in any other tort, the plaintiff must plead and prove the "detriment proximately caused" by the defendant's tortious conduct. (Civ. Code, § 3333.) Deception without resulting loss is not actionable fraud. [Citation.] "Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown."' (*Service By Medallion, Inc. v. Clorox Co., supra*, 44 Cal.App.4th at p. 1818; see *Cooper v. Equity Gen. Insurance* (1990) 219 Cal.App.3d 1252, 1262 [268 Cal.Rptr. 692] ['in California, every element of a cause of action for fraud must be alleged both factually and specifically, and the policy of liberal construction of pleadings will not be invoked to sustain a defective complaint'].)" (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 776.)

Plaintiff's negligent and intentional misrepresentation causes of action suffer from a deficiency similar to the deficiency in his promissory estoppel claim—he cannot adequately allege the requisite detriment. According to plaintiff, the negligent and intentional representations upon which he allegedly relied "lulled him into inaction," presumably meaning he refrained from taking adequate steps to avoid foreclosure. The alleged detriment flowing from that reliance or inaction was the foreclosure sale of plaintiff's home. But, as noted, plaintiff did not allege that he lost possession of the property and also affirmatively alleged that Chase subsequently rescinded the foreclosure and reduced the amount of his monthly payments during the period between the foreclosure and that rescission. The trial court therefore properly sustained the demurrer to the negligent and intentional misrepresentation claims.

### 4.    *Cause of Action for Violation of UCL*

Plaintiff maintains that he adequately alleged a UCL claim under the unlawful, unfair, and fraudulent prongs of that statutory scheme. According to plaintiff, the facts he alleged showed that defendants violated Civil Code sections 2924 and 2923.5 and also

showed defendants' conduct in misstating the postponement of the foreclosure sale and the status of the loan modification was both unfair and fraudulent.

The California Supreme Court has said, "The UCL defines 'unfair competition' as 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.' (Bus. & Prof. Code, § 17200.) By proscribing 'any unlawful' business act or practice (*ibid.*), the UCL '"borrows"' rules set out in other laws and makes violations of those rules independently actionable. [Citation.] However, a practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent practices are alternate grounds for relief. [Citation.] . . . [¶] We have made it clear that 'an action under the UCL "is not an all-purpose substitute for a tort or contract action." [Citation.] Instead, the act provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices. As we have said, the "overarching legislative concern [was] to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition." [Citation.] Because of this objective, the remedies provided are limited.' [Citation.] Accordingly, while UCL remedies are 'cumulative . . . to the remedies or penalties available under all other laws of this state' (Bus. & Prof. Code, § 17205), they are narrow in scope." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370-371.) The Supreme Court has also explained that "[v]iolations of federal statutes, including those governing the financial industry, may serve as the predicate for a UCL cause of action. [Citations.]" (*Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 394.) "[U]nder the unlawful prong, the UCL ""'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.' [Citation.] Depending upon which prong is invoked, a UCL claim may most closely resemble, in terms of the right asserted, an action for misrepresentation [citations], or any of countless other common law and statutory claims." (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1196.)

Even if plaintiff adequately alleged conduct that was unlawful, unfair, and fraudulent under the UCL, he nonetheless failed to allege adequately the requisite loss to establish his standing to sue under the UCL. "'In 2004, the electorate substantially revised the UCL's standing requirement; where once private suits could be brought by "any person acting for the interests of itself, its members or the general public" (former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198), now private standing is limited to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition (§ 17204, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) § 3; see *Californians for Disability Rights v. Mervyn's, LLC* [(2006)] 39 Cal.4th [223,] 227-228 . . .). [¶] . . . [¶] [A] party who has lost money or property generally *has* suffered injury in fact. Consequently, the plain language of these clauses suggests a simple test: To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320-322.)

As noted above, although plaintiff initially alleged that he lost title to his property through foreclosure, he did not allege that he lost possession of the property, and he affirmatively alleged that he reacquired title two years after the foreclosure. In addition, plaintiff also alleged that his monthly payments to Chase, which he continued to make throughout the period he was without title, were substantially reduced from the amount due under the original loan. In contrast to these facts, which suggest that plaintiff did not suffer an economic injury, there were no allegations of any other concrete economic injury flowing from the rescinded foreclosure sale. (See *Chapman v. Skype Inc*. (2013) 220 Cal.App.4th 217, 228 ["To satisfy [the economic injury requirement of Proposition 64] at the pleading stage a plaintiff must allege facts showing that he or she suffered an economic injury caused by the alleged violation"].) As a result, plaintiff failed to state

18

facts sufficient to establish his standing to sue under the UCL. Therefore, the trial court did not err in sustaining the demurrer to the UCL claim.

        5.      *Leave to Amend*

As discussed above, the record and briefs provided by plaintiff are inadequate to satisfy his burden on appeal of demonstrating affirmatively that the trial court abused its discretion when it sustained the demurrer without leave to amend. We therefore affirm that portion of the trial court's order denying plaintiff further leave to amend his pleading.

**DISPOSITION**

The order sustaining the demurrer to the third amended complaint without leave to amend and the judgment entered based on that order are affirmed. The parties shall bear their own costs.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

19