[No. B173872. Second Dist., Div. Four. Aug. 18, 2005.]

LEEGIN CREATIVE LEATHER PRODUCTS, INC., Plaintiff and Appellant, v.
CAROLINA DIAZ SANTIAGUIN, Defendant and Respondent.

**COUNSEL**

Goldstein & Petito, Charles H. Goldstein and Jonathan A. Goldstein for Plaintiff and Appellant.

Lessing C. Solov for Defendant and Respondent.

OPINION

WILLHITE, J.—

## INTRODUCTION

This is a fraud action brought by an employer against one of its employees. The employer contends the employee has knowingly filed a fraudulent workers' compensation claim. The employer's alleged damages are the increased insurance premiums it will be required to pay as a result of the claim. The employee filed a special motion to strike the employer's complaint under Code of Civil Procedure section 425.16, the so-called anti-SLAPP statute (strategic lawsuit against public participation). The trial court granted the motion. The employer appeals. We affirm because there is no probability that the employer will prevail upon its fraud claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.  *The Complaint*

On June 17, 2003, Leegin Creative Leather Products, Inc. (Leegin) filed a fraud complaint against Carolina Diaz Santiaguin alleging the following facts.[1]

On January 3, 2003, Santiaguin informed Leegin that she was suffering from work-related injuries based on an event that had occurred on December 2, 2002. Leegin sent Santiaguin to the industrial health clinic it uses to diagnose and treat its employees for work-related injuries. From January 4, 2003 to April 8, 2003, Santiaguin worked "on light duty" because Leegin "reasonably believed" Santiaguin had suffered work-related injuries. Since April 9, 2003, Santiaguin has not worked because Leegin had no light work duty for her.

Dr. Munir Uwayday certified that Santiaguin was temporarily totally disabled in both arms from April 10 to June 23, 2003.

On April 11, 2003, Santiaguin filed a workers' compensation claim for injuries suffered in December 2002 and continuing thereafter. The injuries were to her "[b]ilateral shoulders, arms, wrists, hands, and fingers." Leegin reported Santiaguin's claim to its workers' compensation insurer.

---

[1] Leegin's original complaint named her as Carolina Diaz Santiaguin. Her subsequent responses averred that her correct full name was Carolina Sartiaguin Diaz. However, there was no formal change to the pleadings to reflect the latter name. We therefore refer to her by the name used in the complaint.

In May 2003, Leegin learned that Santiaguin's injury claim was false. Leegin had been "advised that [Santiaguin] had been observed and video-taped performing strenuous physical activities at and near her home and at other locations and engaging in other acts and conduct that are inconsistent with the physical activities of a person who is totally temporarily disabled because [of an] injury to her bilateral shoulders, arms, wrists, hands and fingers."

Leegin alleged that Santiaguin falsely represented that she had been injured on the job "with the intent to have [Leegin] rely upon [those false representations] and with the foreseeable consequence of having [Leegin] submit [her] claim to its workers' compensation carrier[.]" Leegin alleged it had "reasonably relied upon . . . Santiaguin's representations that she had suffered injuries described in the Employee's Claim for Benefits and the Application for Adjudication of Claim filed April 11, 2003, that she was temporarily totally disabled." Leegin reported the claim to its workers' compensation insurer.

Leegin alleged that because it reported Santiaguin's fraudulent claim to its insurer, it (Leegin) "has been damaged and has otherwise suffered a detriment in that, among other things, [Leegin's] insurance premiums and reserves will automatically be increased in an amount to be proven at trial." Leegin also sought punitive damages.

### 2. Santiaguin's anti-SLAPP Motion

On August 28, 2003, Santiaguin filed her special motion to strike the complaint.[2] She urged that Leegin's action would have a chilling effect on her constitutional right to seek redress for her injuries through the workers' compensation system. A declaration from Santiaguin's attorney explained that Santiaguin's workers' compensation claim was "presently pending." Leegin's insurer, the State Compensation Insurance Fund (SCIF), had "accepted [the] claim" and was providing medical treatment and temporary disability insurance. Citing Labor Code section 5402, counsel argued that because SCIF had not rejected the claim within 90 days, it was presumed compensable. Lastly, counsel claimed that SCIF had not raised "any defense of fraud" or alleged any fraud or misconduct by Santiaguin.

### 3. Leegin's Opposition to the anti-SLAPP Motion

Leegin conceded that for purposes of the motion to strike, Santiaguin's actions were taken " 'in furtherance of [her] right of petition or free speech

---

[2] At the same time, Santiaguin filed an answer to Leegin's complaint.

under the United States or California Constitution in connection with a public issue.' " (Code Civ. Proc., § 425.16, subd. (e).) (Leegin reiterates that concession in this appeal.)

To demonstrate the probability of prevailing on the merits of its complaint, Leegin offered evidence to establish Santiaguin's claim was fraudulent. In a declaration, Gregory Robles, Leegin's safety manager, explained that he first became suspicious of Santiaguin's claim in April 2003 after a Leegin employee told him that he had seen Santiaguin "pulling a large suitcase full of clothes to sell to the employees." As a result, Leegin contacted its insurance agent. It was decided to conduct a surveillance of Santiaguin. Ronald J. Danison, a claims investigator, took the video surveillance tape of Santiaguin on May 22, 2003. Danison's declaration explained that he observed and videotaped her "exerting a considerable amount of force in order to accomplish several activities, including lifting heavy boxes, lifting a heavy vacuum, closing a heavy garage door, squatting several times to lift these objects and to speak with a child." Thereafter, Leegin contacted the SCIF claims adjuster. The adjuster "suggested that [SCIF] do some additional surveillance of [Santiaguin]. [Leegin] told him that [it] already had a great deal of evidence on tape demonstrating that she was not [temporarily totally disabled] as of the date of the surveillance. [The adjuster's] only response was to keep him posted."

Dr. Brian Solberg, director of orthopaedic trauma at Cedars Sinai Medical Center, reviewed the surveillance videotape. In his report, Dr. Solberg wrote: "[D]uring the time period of the video, [Santiaguin] displayed normal shoulder, elbow, wrist and finger motion. All motions demonstrated were . . . well within normal. [She] repeatedly demonstrates an ability to lift objects up to 25 lbs. without overt signs of strain or discomfort. She also demonstrates the ability to deep knee squat for periods in excess of thirty seconds without overt signs of discomfort or kneeling problems." Dr. Solberg concluded that based upon the objective evidence of the video, Santiaguin had "at the maximum, a disability which precludes heavy work[, e.g.] . . . lifting in excess of 50 lbs. repeatedly. [She] has clearly demonstrated the ability to lift objects up to 25 lbs. repeatedly [and] to perform tasks requiring significant grip strength." Therefore, he could refute "with reasonable medical probability" Santiaguin's claim of "total temporary disability."

In addition to the above evidentiary showing, Leegin offered legal authorities to support its argument that its right to sue Santiaguin for fraud was not barred by the exclusivity provisions of the workers' compensation system.

### 4.  *Santiaguin's Reply to Leegin's Opposition to Her Motion to Strike*

Santiaguin argued that Leegin's evidence at most "may raise an issue of the nature and extent of [her] industrial disability" but did not show fraud because Leegin's complaint alleged she "suffered no injury to begin with, not that she is exaggerating or amplifying the degree of her disability." Her workers' compensation claim was "based on her inability to engage in her usual and customary occupation," not an inability "to engage in normal daily activities which are considerably less arduous than those of her work as a laborer."

On the legal issue of an employer's right to sue an employee for filing a fraudulent workers' compensation claim, Santiaguin cited Labor Code section 3820 to urge that the only civil remedy for this species of fraud is an action by a district attorney.

### 5.  *The Trial Court's Ruling*

The trial court requested and received additional briefing from the parties on four legal questions related to Leegin's right to bring an action for fraud against Santiaguin in the civil court system. At the hearing held on the motion, the court's remarks indicated that it believed Leegin did not have a right to file a fraud action against Santiaguin.[3] Instead, according to the court, Leegin's remedy was to contest Santiaguin's claim for benefits—a claim which had not yet been decided—in the context of the workers' compensation system. The trial court's minute order grants Santiaguin's motion to strike Leegin's complaint and awards her attorney fees and costs.

This appeal by Leegin follows.

### DISCUSSION

■  Leegin contends: "As a matter of law, [its] fraud claim is not encompassed under the exclusivity provision of the [Workers' Compensation Act]." (Underscoring omitted.) Leegin reviews at length case law discussing the doctrine of workers' compensation exclusivity. However, Leegin's contention and analysis misframe the issue. With limited exceptions, the exclusivity provisions (Lab. Code, §§ 3601 and 3602) bar actions by an employee against an employer seeking redress for injury *to* an employee. The provisions do not address an *employer's* right to sue an employee. (See *Charles J.*

---

[3] At the hearing, the parties did not argue whether Leegin had shown a probability of prevailing on the factual claim of fraud. The only remark the court made was: "And I certainly offer no question about whether Miss Santiaguin's case is a fraud[.]"

*Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810–812 [102 Cal.Rptr.2d 562, 14 P.3d 234].)

Given the procedural posture of this case—dismissal of the complaint pursuant to an anti-SLAPP motion—the real issue is whether Leegin has demonstrated a probability it will prevail upon the merits of its fraud claim.[4] It did not and cannot do so.

■ "Under California law, a cause of action for fraud requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages. [Citation.]" (*Wilkins v. National Broadcasting Co.* (1999) 71 Cal.App.4th 1066, 1081 [84 Cal.Rptr.2d 329].) In this case, Leegin can not establish the elements either of justifiable reliance or resulting damage.

Leegin's complaint alleged that it reasonably relied upon Santiaguin's misrepresentations by forwarding her claim to its insurer, SCIF. However, as a matter of law, Leegin's forwarding of the claim to its insurer does not constitute detrimental reliance. To the contrary, as we now explain, controlling law, as well as the SCIF policy, establish that Leegin was required to forward the claim to SCIF. Because Leegin had no choice but to send SCIF the claim, it could not have "relied" upon any misrepresentations made by Santiaguin.

■ Labor Code section 5401, subdivision (a), requires an employer to provide an employee with a workers' compensation claim form and a notice of potential eligibility for benefits within one working day after it receives notice or knowledge of an injury. The employee completes and files the claim form with the employer. (Lab. Code, § 5401, subd. (c).) The employer is then required to provide a copy of the completed form to its workers' compensation insurer. (Lab. Code, § 5401, subd. (c); see also 8 Cal. Code Regs., § 10119.) Once the insurer receives the claim, "the insurer assumes responsibility for adjusting the claim. . . . [¶] The [insurer] must accept or reject the claim within 90 days after the claim form is filed; otherwise, the injury will be presumed compensable. . . . [¶] If [the insurer] decides to reject the claim, it must send a notice denying liability for all compensation benefits within 14 days after the decision to deny, stating the reasons for the denial, and stating the claimant's remedies." (Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2004) §§ 1.21, 1.22, p. 18.)

---

[4] Pursuant to Government Code section 68081, we requested and received letter briefs from the parties on this issue.

Leegin's workers' compensation policy with SCIF tracks these statutory obligations. Part Four of the policy is entitled: "Your Duties If Injury Occurs."[5] It recites: "Tell us at once if an injury occurs that *may* be covered by this policy." (Italics added.) The policy requires Leegin to furnish SCIF with all information related to the workers' compensation claim, to promptly give SCIF "all notices, demands and legal papers related to the injury, claim, proceeding or suit," and to cooperate and assist in SCIF's investigation and defense of the claim.

Given this framework, Leegin's claim of reasonable reliance fails as a matter of law. Simply stated, Leegin had no choice but to forward the claim to SCIF. It was required to do so both by law and by the insurance policy provisions. Leegin was nothing more than a conduit in passing the claim onto its insurer. Leegin therefore errs, as a matter of law, in alleging that it sent the claim to SCIF in reliance upon Santiaguin's misrepresentations.[6] Hence, Leegin's claim of fraud cannot be sustained.

■ Furthermore, we note that if an employer such as Leegin believes a claim is fraudulent, it has a statutory remedy within the workers' compensation framework. Labor Code section 3761 provides that if, while the claim is pending, the employer has actual knowledge of facts that would tend to disprove any aspect of the employee's claim, it must promptly notify its insurer in writing. (Lab. Code, § 3761, subd. (b).) This provision is consistent with the general principle that it is the insurer who investigates a claim and decides whether or not to contest or settle it.

■ In addition to failing to establish the element of reliance, Leegin failed to establish damages. "In order to recover for fraud, as in any other tort, the plaintiff must plead and prove the 'detriment proximately caused' by the defendant's tortious conduct. (Civ. Code, § 3333.) Deception without resulting loss is not actionable fraud. [Citation.]" (*Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1818 [52 Cal.Rptr.2d 650].)

■ Leegin's complaint alleged damages in the form of increased premiums. This claim is premature because Santiaguin's claim has not yet been adjudicated. If it is determined that Santiaguin's claim is false, Leegin will not suffer any damages.[7] When an employer properly notifies its insurer of

---

[5] Leegin included a copy of its policy as an exhibit to its brief that answered the four questions posed by the trial court.

[6] In its letter brief to this court (see fn. 4, *ante*), Leegin wrote: "Leegin concedes for purposes of this appeal only, that its insurance policy with State Compensation Insurance Fund ('SCIF') requires the company to notify its carrier of any claims made for benefits."

[7] To support its argument that it should be able to sue Santiaguin for fraud, Leegin notes that "the WCAB is not constitutionally or statutorily empowered to make specific determinations

any facts suggesting a fraudulent claim (Lab. Code, § 3761, subd. (b)) and the Appeals Board thereafter determines that the employee is *not* entitled to compensation,[8] "the insurer shall reimburse the employer for any premium paid solely due to the inclusion of the successfully challenged payments in the calculation of the employer's experience modification."[9] (Lab. Code, § 3761, subd. (d).)[10]

In its letter brief to this court (see fn. 4, *ante*), Leegin amplified its claim of damages. Because Santiaguin was no longer working, Leegin claimed it either had to pay other employees overtime to cover her job or had to spend money to hire and train a new employee. However, these expenses have nothing to do with whether or not Santiaguin's claim is false. As Leegin itself notes, "the loss of any employee to a company for an extended period of time, whether because of injury, sickness, leave, or dismissal, creates the need to either replace that employee with an existing company employee or to hire a new employee to perform the same tasks as the former employee." In other words, the genuineness of Santiaguin's workers' compensation claim has no relationship to any costs occasioned by her absence. There is simply no causal connection between the veracity of her claim and whatever expenses Leegin incurs because she is now absent from the workplace. Lastly, there is no merit to Leegin's argument that it has "suffered actual damages in the form of lost productivity and work from its existing employees due to low worker moral[e] created by [Santiaguin's] fraud." That claim of damages is simply too speculative to support its fraud cause of action.

In sum, Leegin failed to demonstrate that its complaint presents a legally sufficient claim supported by a prima facie showing of facts sufficient

regarding the existence or non-existence of fraud by an applicant. Nor is fraud listed among any of the extensively enumerated list of conditions essential to an award of compensation and benefits for a compensable injury, pursuant to Labor Code Section 3600." The argument misses the mark. The WCAB "does have the power to find that an applicant has committed fraud and, on that basis, to determine either that there is no industrial injury or that disability and the need for medical treatment is not so extensive as the applicant claims. [Citation.]" (Herlick, Cal. Workers' Compensation Handbook (24th ed. 2005) § 9.18, pp. 9-32 to 9-33.)

[8] Labor Code section 3761, subdivision (b) provides that if the employer provides the insurer with written notice questioning the validity of the claim, the appeals board may not approve a compromise and release agreement or stipulation that provides compensation to the employee unless the insurer notifies the employer of the hearing at which the compromise and release agreement or stipulation is to be approved.

[9] Labor Code section 3762, subdivision (a) requires an insurer to discuss "all elements of the claim file that affect the employer's premium with the employer, and shall supply copies of the documents that affect the premium at the employer's expense during reasonable business hours."

[10] The employee is not required to refund the challenged payment. (Lab. Code, § 3761, subd. (d).)

to sustain a judgment in its favor. (See, e.g., *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802].) The trial court properly struck the complaint.

Finally, we observe that sound policy considerations support this conclusion. Permitting an employer to bring a civil action for fraud against an employee while the workers' compensation proceeding is pending could have a chilling effect on an employee's exercise of the right to file a workers' compensation claim. In addition, the workers' compensation system already provides the proper vehicle for an employer to raise a claim of fraud[11] and to protect itself from the damages (higher premiums) caused by a fraudulent claim. (Lab. Code, § 3761, subds. (b) & (d).)

## DISPOSITION

The judgment (order striking the complaint) is affirmed. Each side to bear its own costs and attorney fees on appeal.

Epstein, P. J., and Curry, J., concurred.

A petition for a rehearing was denied September 6, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 16, 2005.

---

[11] Presenting a fraudulent workers' compensation claim can also result in civil and criminal sanctions. It is unlawful to present any knowingly false or fraudulent statement in support of a workers' compensation claim. (Lab. Code, § 3820, subd. (b).) Violation of the provision results, in addition to any other penalties prescribed by law, in the imposition of *civil* penalties to be recovered in a civil action by the district attorney. (Lab. Code, § 3820, subds. (d), (e) & (f).) If the insurer learns of a fraudulent claim, the insurer is obligated to notify the local district attorney and the Bureau of Fraudulent Claims of the Department of Insurance. (Ins. Code, § 1877.3, subd. (b)(1); *Mosby v. Liberty Mutual Ins. Co.* (2003) 110 Cal.App.4th 995, 1004 [2 Cal.Rptr.3d 286].) Insurance Code section 1871.4 defines the crime of presenting a false workers' compensation claim and sets forth its punishment range. A conviction of workers' compensation fraud "that materially affects the basis of any order, decision, or award of the appeals board shall be sufficient grounds for a reconsideration of that order, decision, or award." (Lab. Code, § 5803.5.)