Filed 5/13/16  Shwarz v. Bridgelock Capital CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BETH SHWARZ,<br><br>　　　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>BRIDGELOCK CAPITAL et al.,<br><br>　　　　　　Defendants and Respondents. | B262386<br><br>(Los Angeles County<br>　Super. Ct. No. PC055740) |

APPEAL from an order of the Superior Court of Los Angeles County.  Stephen P. Pfahler, Judge.  Affirmed.

Law Offices of Andrew J. Stern and Andrew J. Stern for Plaintiff and Appellant.

Krishel Law Offices and Daniel L. Krishel for Defendants and Respondents.

————————————

This is the third lawsuit filed by plaintiff Beth Shwarz against defendants Bridgelock Capital, Inc. (Bridgelock) and Peak Financial Partners, Inc. (Peak), related to a home equity loan that her husband, Joseph Shwarz, obtained from Bridgelock, on which Peak sought to foreclose following Mr. Shwarz's default. The crux of this lawsuit is that plaintiff's signature on an agreement settling the first lawsuit was forged, and defendants tricked her into authenticating the forged agreement during a deposition in her second lawsuit, thereby misleading plaintiff into dismissing her second lawsuit. The trial court granted defendants' special motion to strike plaintiff's cause of action for fraud in this third lawsuit, reasoning it arose from defendants' protected litigation activity, and that the conduct was absolutely privileged under the litigation privilege. We affirm.

## FACTS

The following facts are taken from the operative complaint and defendants' request for judicial notice: Plaintiff and Mr. Shwarz are the owners of a home in Northridge. In 2008, Mr. Shwarz obtained a home equity line of credit from Bridgelock to invest in his business. The line of credit was increased a number of times, but the full loan proceeds were never dispersed to Mr. Shwarz, even though a trust deed securing the full credit line was recorded against the property. The trust deed was eventually assigned to Peak. Mr. Shwarz defaulted on the loan, and Peak commenced foreclosure proceedings in January 2009.

On September 2, 2010, plaintiff and Mr. Shwarz sued defendants (and the escrow company), seeking to rescind the loan agreement, claiming that defendants engaged in predatory lending, that defendants did not disburse all of the loan proceeds, and that defendants recorded a deed of trust securing the entire line of credit and charged interest on the entire line of credit, including the undistributed funds. On May 23, 2011, the parties entered a settlement and mutual general release agreement (settlement agreement), agreeing that Mr. Shwarz and Peak would enter into a loan modification agreement, extending the time to repay the loan, and that plaintiff and Mr. Shwarz would dismiss their lawsuit. Plaintiff's signature appeared on the settlement agreement. The first lawsuit was dismissed, with prejudice, on June 1, 2011.

2

Mr. Shwarz defaulted under the modified loan agreement, and foreclosure proceedings were commenced in February 2013. Plaintiff (without Mr. Shwarz) filed a second lawsuit on June 10, 2013, seeking to enjoin the foreclosure. In her complaint, plaintiff repeated the allegations from the first lawsuit, alleged that the first lawsuit was dismissed by her counsel without her consent, and that she "never signed the Settlement Agreement."

Plaintiff was deposed on August 29, 2013, in connection with her second lawsuit. She was shown a copy of the settlement agreement. Defendants' counsel asked plaintiff if her signature appeared on the settlement agreement, and before plaintiff could answer, her counsel asked, "Is that your signature?" Plaintiff responded, "Yes." After taking a break at the request of plaintiff's counsel, defense counsel asked plaintiff about the allegation in her complaint that she did not sign the settlement agreement, and "how do you reconcile your admission that you signed [the settlement agreement] but yet in paragraph 33 [*sic*] [of the complaint] you say you never signed it?" Plaintiff responded, "I didn't recall signing it." However, she admitted that seeing the settlement agreement refreshed her recollection and that she had "signed it." That same day, plaintiff's counsel executed a dismissal of her second lawsuit, without prejudice.

On June 9, 2014, plaintiff filed this action, her third lawsuit against defendants. The complaint stated causes of action for fraud in the inducement, rescission, and fraud. Her third lawsuit repeated the same facts as her earlier two lawsuits, but newly alleged that on "August 29, 2013, [defendants] took the deposition of Plaintiff in the 2nd Lawsuit. After showing Plaintiff a number of documents which she had signed as part of securing the . . . loan transaction . . . counsel for [defendants] showed Plaintiff a copy . . . of the Settlement Agreement which ostensibly bore Plaintiff's signature. [¶] . . . After having seen Plaintiff's prior signature on a number of documents, which Plaintiff recalled signing, Plaintiff stated that the signature on the Settlement Agreement was also hers. However, the [defendants] never produced the original Agreement bearing Plaintiff's signature. [¶] . . . Upon seeing a signed copy of the Settlement Agreement, upon advice of counsel, Plaintiff filed a dismissal . . . of the second lawsuit. . . . [¶] . . .

3

[Subsequent to the dismissal], Plaintiff learned, through a handwriting expert, that Plaintiff's signature on the Settlement Agreement was a forgery, and not actually Plaintiff's signature."

The causes of action for fraud in the inducement and rescission were based on the same claims made in the first lawsuit. The third cause of action for fraud alleged that on "August 29, 2013, Defendants . . . perpetrated a fraud on Plaintiff by presenting her with [the settlement agreement], which was ostensibly signed by Plaintiff and representing to Plaintiff that [the settlement agreement] had in fact been signed by Plaintiff. . . . [¶] . . . [A]t the time Defendants . . . presented a copy of [the settlement agreement] to Plaintiff, Defendants . . . had full knowledge that the signature of Plaintiff on [the settlement agreement] was not actually her signature. The true fact is that the signature of Plaintiff on [the settlement agreement] was in fact forged and not Plaintiff's actual signature. [¶] . . . At the time that Defendants . . . presented Plaintiff with a copy of [the settlement agreement], Plaintiff believed that the signature purporting to be her signature . . . was in fact her signature. [¶] . . . In reliance on the presentation of [the settlement agreement] to Plaintiff by Defendants, . . . Plaintiff detrimentally relied by causing the 2nd lawsuit to be dismissed . . . ."

Defendants moved for judgment on the pleadings as to the causes of action for fraud in the inducement and rescission, on the basis that the claims were the same as those raised by the first complaint which had been dismissed with prejudice, and were therefore barred by res judicata. They also moved for sanctions under Code of Civil Procedure section 128.7.[1] Plaintiff later dismissed the causes of action for fraud in the inducement and rescission, and the trial court granted the motion for sanctions.

Additionally, defendants filed a special motion to strike plaintiff's cause of action for fraud, under section 425.16, contending that the fraud claim was based on statements and documents published at plaintiff's deposition in the second lawsuit, and therefore

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

constituted protected activity. For this same reason, defendants urged that plaintiff could not demonstrate a probability of prevailing on her claim, because the litigation privilege was an absolute bar to her claim. In support of their motion, defendants produced the earlier complaints filed by plaintiff, plaintiff's deposition testimony, and other documents detailing the litigation history between the parties.

Plaintiff's opposition to the motion argued that defendants had not demonstrated that plaintiff's third cause of action arose from protected activity, and that in any event, there was a probability she would prevail on the merits of her claim. Specifically, plaintiff argued that the gravamen of her fraud claim was "the fraudulent act of Defendants" in showing her a forged document at her deposition, and not any protected activity. She also argued that the litigation privilege does not apply to claims involving spoliation of evidence, and does not apply to fraud claims.

In support of her opposition, plaintiff presented a declaration averring that "I didn't believe I ever signed, nor was I ever asked to sign, nor was I ever shown the Settlement Agreement, prior to my deposition being taken in the Second Lawsuit." Plaintiff also included declarations by forensic document examiners. Victoria Petersen concluded it was "highly probable" that plaintiff's signature on the settlement agreement was not genuine. Certified document examiner Jess E. Dines also concluded that it is "highly probable" that the signature appearing on the settlement agreement was not genuine.

Defendants' reply reiterated the arguments made in support of their motion, and argued that plaintiff was bound by her judicial admission during her deposition that she had signed the settlement agreement.

The trial court granted the motion, and awarded defendants $20,485 in attorney fees and costs. This timely appeal followed.

## DISCUSSION

### 1.     Standard of Review

A defendant may bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under

the United States Constitution or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) The trial court rules on a SLAPP[2] motion using a two-step process. First, it looks to see whether the defendant has made a prima facie showing that the challenged causes of action arise from protected activity. (§ 425.16, subd. (b)(1).) Next, if the defendant makes this threshold showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claims. (*Ibid.*; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 712.) In making both of these determinations, the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) In assessing the second, the court looks to admissible evidence. (*Brill Media Co.*, *LLC v. TCW Group, Inc.* (2005) 132 Cal.App.4th 324, 329, disapproved on other grounds by *Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 25, fn. 3.) Our review on appeal is de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

## 2. Protected Activity

The moving defendant is required to make a prima facie showing that one or more of plaintiff's causes of action arise from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.) The defendant meets this burden by demonstrating that plaintiff's claims arise from "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of

---

[2] SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 57, fn. 1 (*Equilon Enterprises*).)

the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) The defendant need not prove that the challenged conduct is protected by the First Amendment as a matter of law. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80 (*City of Cotati*).)

Section 425.16, subdivision (e)(1) and (2) "encompass[] any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113.) Courts have broadly construed the definition of litigation-related activity under section 425.16. (See *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) Communications preparatory to or in anticipation of litigation or other official proceedings are within the scope of protected activity. (*Briggs*, *supra*, p. 1115; see also *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) Depositions are within the ambit of litigation-related activity. (*Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 237-238.)

In deciding whether a complaint arises from defendant's protected activity, courts do not look to "the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.) "[T]he mere fact that an action was filed after protected activity took place does not mean it arose from that activity." (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 66.) The crucial determinant is "whether the cause of action is *based on* the defendant's free speech or petitioning activity." (*Navellier*, at p. 89.) "[T]he defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." (*City of Cotati*, *supra*, 29 Cal.4th at p. 78.) Where the protected activity will only be used as evidence in the case, and no claim is based on it, the protected activity is only incidental to the claims. (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 809-810.) Courts focus on the substance or gravamen of the plaintiff's lawsuit to make this determination. (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 669-670.)

7

Plaintiff contends, without citing any authority, that "act[s] of fraud" cannot constitute protected activity under section 425.16. However, section 425.16 has routinely been applied to activity characterized as fraudulent. (See *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 962-969 [section 425.16 applies to fraudulent settlement practices]; *Leegin Creative Leather Products, Inc. v. Diaz* (2005) 131 Cal.App.4th 1517, 1520 [claim based on fraudulent workers' compensation claim subject to section 425.16].) The focus is not on the form of the cause of action, but on the activity underlying it. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1232.)

Plaintiff also contends that the basis of liability is the noncommunicative act of forging the settlement agreement, and that any communicative conduct which occurred at the deposition was merely incidental to her fraud claim. (See *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 870-871 [section 425.16 protects only communicative conduct, unless the conduct at issue concerns a matter of public interest].)

Here, the activity underlying plaintiff's fraud claim was defendants' publication of the allegedly forged settlement agreement at her deposition, in a manner which misled plaintiff into admitting its authenticity, and induced her to dismiss her second lawsuit. The complaint is aimed directly at defendants' communicative litigation conduct. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1063 [act of filing allegedly false declarations of service to obtain a default judgment, and postjudgment enforcement efforts, fell within the ambit of section 425.16, and were protected by the litigation privilege]; see, e.g., *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 489 [publication of forged permit to city planning commission was communicative litigation conduct under the litigation privilege].)

### 3.   Probability of Prevailing

Once a defendant establishes that the anti-SLAPP statute applies, the burden shifts to the plaintiff to demonstrate a "reasonable probability" of prevailing on the merits. (*Equilon Enterprises*, *supra*, 29 Cal.4th at p. 67.) "To establish such a probability, a

8

plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.)  The plaintiff's prima facie showing need only demonstrate that the claim has " 'minimal merit.' " (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 291.)

Here, defendants contend that the litigation privilege bars plaintiff's fraud claim. "The [litigation] privilege in [Civil Code] section 47 is 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense plaintiff must overcome to demonstrate a probability of prevailing. [Citations.]' [Citation.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 38; see also *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [The court should grant the Code of Civil Procedure section 425.16 motion "if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempts to establish evidentiary support for the claim."].)

Civil Code section 47, subdivision (b) provides that "[a] privileged publication or broadcast is one made:  [¶]  . . .  [¶]  . . . In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 . . . ."  " 'The purposes of [the litigation privilege], are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.  [Citation.]  To effectuate these purposes, the litigation privilege is absolute and applies regardless of malice.  [Citation.]  Moreover, "[i]n furtherance of the public policy purposes it is designed to serve, the privilege prescribed by section 47 has been given broad application."  [Citation.]' [Citation.]" (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 336.)

"[T]he privilege [generally] applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to

achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.  [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.)  "Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation].  It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.  [Citation.]" (*Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1057.)  Moreover, where the gravamen of the complaint is a privileged communication, the litigation privilege extends to necessarily related noncommunicative conduct.  (*Id.* at pp. 1062-1063.)  "Any doubt as to whether the privilege applies is resolved in favor of applying it.  [Citations.]" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529.)

Plaintiff contends that the litigation privilege does not apply to "any communication made in furtherance of an act of intentional destruction or alteration of physical evidence undertaken for the purpose of depriving a party to litigation of the use of that evidence . . . ." (Civ. Code, § 47, subd. (b)(2).)  However, plaintiff's claim is not based on defendants' spoliation of evidence, but on their act of asking plaintiff to authenticate an allegedly forged settlement agreement at her deposition.  Therefore, the spoliation exception to the litigation privilege has no application here.  Neither is plaintiff's claim based on the act of forgery; indeed, plaintiff does not allege who forged her signature on the settlement agreement.  Therefore, we are not called upon to decide whether the forgery of the settlement agreement was protected by the litigation privilege.

The conduct and statements underlying plaintiff's fraud claim were made in the course of litigation between the parties.  Accordingly, the litigation privilege bars plaintiff's claim, and plaintiff cannot meet her burden under the second prong of the anti-SLAPP statute.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.)

10

**DISPOSITION**

The order is affirmed.  Respondents are to recover their costs on appeal.

GRIMES, J.

WE CONCUR:

BIGELOW, P. J.

RUBIN, J.